**No. 24-3089**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

STATE OF ALASKA, et al.,
*Plaintiffs-Appellees-Cross-Appellants*,

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,
*Defendants-Appellants-Cross-Appellees*.

On Appeal from the United States District Court
for the District of Kansas
District Case No. 6:24-cv-01057-DDC-ADM (Judge Daniel D. Crabtree)

**BRIEF OF *AMICI CURIAE* STATES OF MISSOURI, ARKANSAS, FLORIDA, GEORGIA, NORTH DAKOTA, OHIO, AND OKLAHOMA IN SUPPORT OF PLAINTIFFS-APPELLEES-CROSS-APPELLANTS APPEAL OF DISTRICT COURT'S PARTIAL DENIAL OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

ANDREW BAILEY
  Attorney General of Missouri
JOSHUA M. DIVINE
  Solicitor General
REED C. DEMPSEY
  Deputy Solicitor General
SAMUEL FREEDLUND
  Deputy Solicitor General
ATTORNEY GENERAL'S OFFICE
Post Office Box 899
Jefferson City, MO 65102
(573) 751-1800
josh.divine@ago.mo.gov

i

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................... iii

**INTEREST OF *AMICI* STATES AND SUMMARY OF ARGUMENT** ............ 1

**ARGUMENT** .......................................................................... 6

I.    The Higher Education Act Does Not Authorize the Secretary to Promulgate the Final Rule. ................................................. 6

    A.    The Final Rule's forgiveness provisions are unlawful. ....................... 6

    B.    The Final Rule's revised payment amounts are unlawful. ................. 10

II.    Defendants engaged in astonishing unlawful activity to evade the Eastern District of Missouri's injunction ................................................. 13

    A.    Defendants cannot create a new "hybrid" repayment plan without notice and comment ............................................................ 13

    B.    Defendants are wrong to contend that *Amici* States failed to challenge all forgiveness provisions in the Final Rule. ..................... 16

**CONCLUSION** ...................................................................... 18

**CERTIFICATE OF COMPLIANCE** ............................................... 20

**CERTIFICATE OF SERVICE** ..................................................... 21

# TABLE OF AUTHORITIES

**Cases** ............................................................................................... **Page(s)**

*Alabama Assn. of Realtors v. Dep't of Health and Human Services*,
594 U.S. 758 (2021) ..............................................................................6, 7

*Biden v. Nebraska*,
143 S. Ct. 2355 (2023) ...........................................................................6

*Bittner v. United States*,
598 U.S. 85 (2023) ...................................................................................9

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982) ...............................................................................12

*In re Goodvin*,
No. 19-10623, 2020 WL 6821867 (Bankr. D. Kan. Sept. 1, 2020) .......8

*Peoples v. U.S. Dep't of Agric.*,
427 F.2d 561 (D.C. Cir. 1970) ...............................................................11

*Taggart v. Lorenzen*,
587 U.S. 554 (2019) .................................................................................9

*Van Buren v. United States*,
593 U.S. 374 (2021) ...............................................................................10

**Statues**

20 U.S.C. § 1078 ........................................................................................ 8

20 U.S.C. § 1087e ......................................................................... 2, 7, 8, 10, 11

20 U.S.C. § 1087ee ..................................................................................... 9

20 U.S.C. § 1098e ................................................................................... 9, 13

## Regulations

34 C.F.R. § 685.209 ........................................................................... 16, 17

88 Fed. Reg. 43,820. ........................................................................ 11, 15, 17

## Rules

Fed. R. App. P. 29(a)(5) ....................................................................... 20

Fed. R. App. P. 32(a)(5) ....................................................................... 20

Fed. R. App. P. 32(a)(6) ....................................................................... 20

Fed. R. App. P. 32(f) ............................................................................. 20

## INTEREST OF *AMICI* STATES AND SUMMARY OF ARGUMENT

The States of Missouri, Arkansas, Florida, Georgia, North Dakota, Ohio, and Oklahoma have a vital interest in this proceeding because these seven States are actively engaged in litigation over the same federal regulation at issue in the applicant States' litigation. While the applicant States sued in the District of Kansas, *amici* States sued in the Eastern District of Missouri.

Both district courts issued preliminary injunctions the same day, and together those injunctions enjoined nearly all applications of the Final Rule. The District of Kansas concluded that the *entire* rule is unlawful. But because that court did not believe the applicant States established irreparable harm for all aspects of the Final Rule, it enjoined only those provisions that went into effect after July 1, 2024.

The Eastern District of Missouri, in contrast, zeroed in on the cornerstone of the Final Rule and concluded that Defendants lack statutory authority to forgive loans. So the Eastern District of Missouri "enjoin[ed] Defendants from any further implementation of the Final Rule's loan forgiveness provisions." *Missouri v. Biden*, No. 24-cv-520 (E.D. Mo), ECF 35, at 3, 61 (attached as Appendix Exhibit A).[1]

---

[1] https://storage.courtlistener.com/recap/gov.uscourts.moed.211135/gov.uscourts.moed.211135.35.0.pdf

1

Thus, two different district courts in two different appellate circuits both concluded on the same day that Defendants acted unlawfully when they purported to authorize mass loan forgiveness to the tune of nearly $500 billion.

And both courts were right to do so.  The Final Rule relies on the Higher Education Act ("HEA").  That Act includes several "repayment plans" including the "standard" repayment plan (10 years, fixed payment amounts) and, as relevant here, the "Income-Contingent Repayment" or "ICR" plan.  The Final Rule relies on the ICR statutory provisions, which permit the Secretary to create a "repayment plan" lasting for a period "not to exceed 25 years" where payment amounts are set based on the income of an individual borrower.  20 U.S.C. § 1087e(d)(1)(D).  So instead of paying back loans over the standard 10 years, borrowers under that program can take up to 25 years to pay back their loans, with payment amounts potentially changing each year.

But Defendants used this authority for something much more ambitious than simply permitting borrowers to repay over 25 years: they created a "repayment plan" that does not require "repayment" at all.  Indeed, it sets payment amounts to *zero* for millions of people, and slashes amounts for millions more.  And then it directs the Secretary to forgive all unpaid balances after as few as 10 years of (potentially $0) payments.  Just as bad, Defendants launched this plan just 10 days after the Supreme

Court struck down their first attempt at mass loan forgiveness—in a transparent attempt to get around the Supreme Court's ruling in *Nebraska v. Biden*.

The Missouri court rightly concluded that nothing in the ICR statutory provisions give Defendants authority to forgive debt. That puts the ICR program in sharp contrast with those statutory programs that do authorize forgiveness—such as the "Income-Based Repayment" or "IBR" plan and the Public Service Loan Forgiveness program. The Missouri court correctly held that "Congress has made it clear under what circumstances loan forgiveness is permitted, and the ICR plan is not one of those circumstances." Ex. A, *Missouri v. Biden*, ECF 35, at 44.

But the Missouri court failed to take the next logical step: If Defendants lack authority to forgive loans under ICR, they necessarily must set payment amounts at levels sufficient for borrowers to in fact repay a loan. So at minimum, the Missouri court should also have enjoined the parts of the Final Rule slashing payment amounts—like the District of Kansas did. Zero-dollar payment amounts *are* loan forgiveness. The *amici* States have appealed that holding and were granted an administrative stay pending adjudication of their emergency motion for injunction pending appeal. The Eighth Circuit prohibited Defendants from "implementing or

acting pursuant to the Final Rule," until a ruling on the emergency injunction motion.[2]

*Amici* States thus have a vital interest in the appeal in this Court because *amici* States are currently seeking in the Eighth Circuit similar relief. *Amici* States file this brief to make two points.

**1.** The parts of the Final Rule that slash payment amounts are unlawful not only for the reasons expressed by the District of Kansas and the applicant States, but also because the ICR statute by its plain text does not authorize loan forgiveness at all. The Secretary is thus required to set payment amounts high enough for individuals to actually repay their loans within 25 years. Zero-dollar payments are clearly insufficient. Indeed, Defendants' position in the emergency-application posture that they can still slash payments even if they cannot forgive loans would lead to an impending storm where millions of borrowers will *default* at the end of 25 years because the Secretary lacks authority to forgive their balances and yet their loans will not be repaid within 25 years.

**2.** A preliminary injunction barring implementation of the Final Rule in its entirety is necessary to prevent Defendants from further unlawful actions. Following the Missouri injunction, Defendants quickly established what they call a "hybrid"

---

[2] https://storage.courtlistener.com/recap/gov.uscourts.ca8.109302/gov.uscourts.ca8.109302.805045608.0.pdf

plan—of sliced and diced provisions from different regulations—that no borrower has been on before.  This plan combined the zero-dollar payments provision from the 2023 regulation with a forgiveness provision from a now-defunct 2015 regulation that Defendants admit was "fully replace[d]" by the 2023 regulation. *Missouri v. Biden*, ECF 52, at 2.[3]

That was brazenly unlawful because the "hybrid" repayment plan did not go through notice and comment, relies on the exact statute that the Missouri court already declared does not permit forgiveness, is a transparent attempt to evade an injunction, and is based on a 2015 regulation that no longer even exists.

While the Eighth Circuit granted *amici* States' emergency motion for an administrative stay, prohibiting Defendants "from implementing or acting pursuant to the Final Rule until [the court] rules" on *amici* States' motion for an injunction pending appeal, a ruling from this Court enjoining the Final Rule in its entirety will prevent further attempts to implement unlawful provisions on dubious interpretations.  States should not be forced to play whack-a-mole when Defendants promulgate obviously illegal regulations without notice and comment to avoid an injunction.

---

[3] https://storage.courtlistener.com/recap/gov.uscourts.moed.211135/gov.uscourts.moed.211135.52.0.pdf

Defendants' relentless effort over two years to unlawfully cancel nearly $500 billion in student loans—extraordinary efforts that continue with their brazen response to the Missouri court injunction—highlights the extraordinary need for relief. Already, the Congressional Budget Office has estimated that the rule has caused a "$145 billion increase" in projected budgetary deficit. CBO, *An Update to the Budget and Economic Outlook: 2024 to 2034*, at 39 (June 2024).[4]

## ARGUMENT

I. **The Higher Education Act Does Not Authorize the Secretary to Promulgate the Final Rule.**

### A. The Final Rule's forgiveness provisions are unlawful.

The Final Rule easily flunks the major questions doctrine, and the "ordinary tools of statutory interpretation" further reinforce that Defendants simply have no authority to forgive loans under the ICR program. *Biden v. Nebraska*, 143 S. Ct. 2355, 2375 (2023).

**1.** As both district courts readily concluded, Defendants' assertion that they have unlimited discretion to unilaterally cancel every penny of every single student loan—and their decision to partially exercise that "discretion" to cancel nearly $500 billion in student loans here—is obviously of "vast economic and political significance" and thus easily triggers the major questions doctrine. *E.g.*, *Alabama Assn. of Realtors v. Dep't of Health and Human Services*, 594 U.S. 758, 764 (2021).

---

[4] https://www.cbo.gov/system/files/2024-06/60039-Outlook-2024.pdf

The problem for Defendants is that, having triggered the major questions doctrine, they are not able to satisfy their burden of identifying "exceedingly clear language" authorizing forgiveness. *Id.* Indeed, to date they have never disputed that the ICR provisions do not include any express forgiveness authority. They instead say forgiveness authority is *implied* from the text that says ICR repayment plans are "not to exceed 25 years." *E.g.*, *Missouri v. Biden*, ECF 22, at 43 ("On Plaintiffs' view, one wonders, what is supposed to happen to any outstanding loan balance after 25 years?").[5] That is fatal to their claim. The major questions doctrine requires Defendants to identify explicit authority, not implicit authority. Defendants' assertion that they have authority to forgive every penny of every student loan thus easily flunks the test under the major questions doctrine.

**2.** The plain text reinforces this conclusion. The text on which the Secretary relies gives the Secretary authority to promulgate "an income contingent repayment plan, with varying annual repayment amounts based on the income of the borrower, paid over an extended period of time prescribed by the Secretary, not to exceed 25 years." 20 U.S.C. § 1087e(d)(1)(D). This language does not provide authority for loan forgiveness. It simply states that the Secretary can vary amounts based on

---

[5] https://storage.courtlistener.com/recap/gov.uscourts.moed.211135/gov.uscourts.moed.211135.22.0.pdf

income (unlike the fixed amounts in other repayment plans) and can give borrowers up to 25 years to repay instead of 10.

In fact, far from authorizing forgiveness, the text expressly requires "repayment." The statute describes ICR plans as "plans for *repayment* of such loan, *including principal and interest*," and it goes on to say the "balance due" from each borrower on an "income contingent repayment" plan "*shall* equal the unpaid principal amount of the loan, any accrued interest, and any fees." § 1087e(d)(1)(D), (e)(5) (emphasis added). That matches the ordinary meaning of the term "repayment." "In the loan or finance context, repayment means paying the amount borrowed and the interest." *In re Goodwin*, No. 19-10623, 2020 WL 6821867, at *8 (Bankr. D. Kan. Sept. 1, 2020), *aff'd*, No. 20-CV-1247-JWL, 2021 WL 1026801 (D. Kan. Mar. 17, 2021).

Against all this, Defendants say the ICR statute authorizes forgiveness implicitly because it permits the Secretary to create repayment plans that are "not to exceed 25 years." Defendants assume this means any unpaid balance must be forgiven after 25 years. But in fact, that text *limits* the Secretary, requiring that he promulgate payment amounts *high* enough so that borrowers repay within 25 years.

The "not to exceed" language cannot implicitly authorize forgiveness because the same exact text is used in four other repayment plans, including the 10-year standard repayment plan, see § 1078(b)(9)(A), and the Secretary has acknowledged

that he has no authority to forgive loans under those plans. When Congress "transplanted" that "not to exceed" language into the ICR statute, it brought "the old soil with it." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). Not even the Secretary thinks that language creates authority to forgive loans on the standard repayment plan, and so the language is insufficient with respect to the ICR plan as well.

And in stark contrast to the ICR provisions, other provisions in the HEA (passed both before and after the 1993 ICR amendments) expressly authorize forgiveness. For example, amendments passed in 1986 authorize forgiveness for teachers, military service members, and Peace Corps volunteers. 20 U.S.C. § 1087ee. And the IBR program, created in 2007, expressly permits forgiveness. § 1098e(b)(7). In fact, the IBR program creates the only vehicle for forgiveness for borrowers on ICR. ICR borrowers can obtain forgiveness, but only *after* switching to the IBR program. § 1098e(b)(7)(A), (b)(7)(B)(iv) (authorizing forgiveness for borrowers who have "made payments under an income-contingent repayment plan" but requiring them to shift to the IBR program first). "When Congress includes particular language in one section of a statute but omits it from a neighbor," as Congress did in the HEA, "we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023). That other provisions in the Higher Education Act expressly permit forgiveness, yet

the ICR provision does not, "underscores the implausibility of the Government's interpretation." *Van Buren v. United States*, 593 U.S. 374, 394 (2021).

After considering the above, the Missouri court rightly concluded that "the plain text of the statute does not support" forgiveness.  Ex. A, *Missouri v. Biden*, ECF 35, at 44.[6]  Simply put, "Congress has made it clear under what circumstances loan forgiveness is permitted, and the ICR plan is not one of those circumstances." *Id.*

### B.  The Final Rule's revised payment amounts are unlawful.

The Final Rule's payment amounts cannot stand alone where forgiveness is not authorized.  Because the Secretary lacks statutory authority to forgive student loan balances under the ICR program, it necessarily follows that the Secretary acted unlawfully when he decided to slash payments amounts so low that monthly payments will *never* result in the "repayment of such loan, including principal and interest." 20 U.S.C. § 1087e(d)(1)(D).  *Amici* States do not dispute that the Secretary has a fair amount of discretion in setting payment amounts based on income, but that discretion has limits: namely, payment amounts must be large enough for borrowers to actually repay their loans within 25 years.  The Secretary must "exercise[] his

---

[6] https://storage.courtlistener.com/recap/gov.uscourts.moed.211135/gov.uscourts.moed.211135.35.0.pdf

discretion in a manner consistent with the statute." *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 566 (D.C. Cir. 1970).

But the Secretary has done the opposite. Under the Final Rule, *millions* of borrowers "pay" $0 per month—indeed, 57% of all borrowers on the new plan. *See FACT SHEET: President Biden Cancels Student Debt for more than 150,000 Student Loan Borrowers Ahead of Schedule,* The White House (Feb. 21, 2024).[7] That is not "repayment." It is not even "partial repayment." And even for those who under the Final Rule pay something larger than $0, the "average" undergraduate borrower (which is more than 80% of borrowers) will pay back only 61 cents per dollar borrowed. 88 Fed. Reg. 43,880. Considering all borrowers (undergraduate and graduate), the "average" borrower still "repays" only 71 cents on the dollar. *Id.*

Because the Missouri court rightly concluded that forgiveness is off the table under the ICR program, it necessarily follows that the Final Rule payment amounts are too low. This follows from the plain text of the ICR provision, which requires the Secretary to "establish procedures for determining the borrower's repayment obligation on that loan for such year, and such other procedures as are necessary to implement effectively income contingent repayment." 20 U.S.C. § 1087e(e)(1). Where forgiveness is off the table, procedures "necessary to implement effectively

---

[7] https://www.whitehouse.gov/briefing-room/statements-releases/2024/02/21/fact-sheet-president-biden-cancels-student-debt-for-more-than-150000-student-loan-borrowers-ahead-of-schedule/

income contingent repayment," require calculations of payment amounts that lead to repayment of a borrower's loan balance within 25 years.

Finding otherwise would lead to an absurd result where the Secretary, knowing that forgiveness is not permitted, could create a plan with the expectation that the majority of borrowers would not repay their loans on time (if ever). *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). Indeed, because 57% of current SAVE Plan borrowers qualify for $0 monthly payments and because the "average" borrower after that still pays only 71 cents on the dollar, almost *no one* will repay their loans. This is an absurd result, "which Congress could not have intended." *Griffin*, 458 U.S. at 574. So absurd in fact that it creates an impending storm where millions of borrowers will *default* at the end of 25 years because the Secretary has no authority to forgive their unpaid balances and yet the Secretary is telling borrowers *not* to repay their loans within 25 years.

Explained another way, income-exemption and payment cap thresholds can only be implemented in the ICR program if they ensure that a borrower can repay their balance within 25 years. Congress recognized this when it designed the separate IBR program years after the ICR program. In 2007, Congress expressly authorized the implementation of very specific income-exemption amounts (150%

of federal poverty line) and payment amounts (15% of income above that line) in tandem with a forgiveness provision. § 1098e. The rationale is obvious: in certain circumstances, the thresholds will lead to shortfalls between what a borrower owes and what the borrower has repaid at the end of the repayment program, and so the Secretary's authority to forgive can cover that gap. But in enacting the ICR provision, Congress did not authorize forgiveness or set out specific income-exemption and payment amount thresholds that would preclude repayment of loans. The result is a grant of authority to the Secretary to design a plan where the "varying annual repayment amounts" must be high enough to cover the "balance due."

## II.     Defendants engaged in astonishing unlawful activity to evade the Eastern District of Missouri's injunction.

Despite the Missouri court "enjoin[ing] Defendants from *any* further implementation of the Final Rule's loan forgiveness provisions," Ex. A, *Missouri v. Biden*, ECF 35, at 3 (emphasis added), Defendants attempted to *continue* their unlawful loan forgiveness on entirely dubious grounds.

### A. Defendants cannot create a new "hybrid" repayment plan without notice and comment.

On June 28, Defendants told the Missouri court (only after the *amici* States' prodding) that they are still forgiving loans after 20 to 25 years. *Missouri v. Biden*,

ECF 44.[8]  Defendants claim authority to forgive loans through a "hybrid" plan created "due to this litigation," which combined all SAVE payment provisions with the forgiveness provision from the now-defunct 2015 regulation (the "REPAYE" plan). *Missouri v. Biden*, ECF 52 at 4–5, 9.  This "hybrid" plan is unlawful for many reasons, and the Eighth Circuit has administratively stayed it pending a ruling on *amici* States' petition.

First, the Secretary has no authority to promulgate new repayment plans without notice and comment.  Defendants do not deny this, so they assert they are in fact forgiving loans under a "preexisting" plan.  Not so.  Before the Missouri court's order, nobody had ever been on this "hybrid" plan.  Indeed, Defendants admitted to the district court that "[i]t is true" that "they are trying to forgive loans between 20 and 25 years for borrowers who were never in any previous ICR program."  *Id*. at 12.  These individuals never signed up for a previous ICR plan, so they plainly cannot be on a "preexisting" plan.

Second, the "preexisting" REPAYE plan that Defendants purport to rely on no longer exists.  Defendants *conceded* to the Missouri court that SAVE "fully replace[d]" the REPAYE plan.  *Id.* at 2.  As Defendants state on their website, "The

---

[8] https://storage.courtlistener.com/recap/gov.uscourts.moed.211135/gov.uscourts.moed.211135.44.0.pdf

SAVE Plan replaced the Revised Pay As You Earn (REPAYE) Plan." *SAVE Plan Announcement* (last visited July 11, 2024).[9]

The text of the Final Rule confirms this.  The Final Rule describes itself as an "umbrella" regulation that "combin[es]" previous ICR repayment plans into one regulation and then makes changes.  88 Fed. Reg. 43,820.  And then the regulation details three "forgiveness" provisions—25-year forgiveness, 20-year forgiveness, and forgiveness between 10 and 19 years.  *See* 88 Fed. Reg. 43,902–03 (amending 34 C.F.R. § 685.209); *see also* 88 Fed. Reg. 43,856 (noting that 20-year and 25-year forgiveness are provisions under the SAVE plan).  Moreover, REPAYE existed at 34 C.F.R. § 209(c), which the Final Rule fully replaced with a new provision titled "Borrower eligibility for IDR plans."

Because the SAVE plan *replaced* REPAYE, and because the Final Rule streamlines previous forgiveness programs under one regulation, Defendants cannot reasonably claim to be forgiving loans on some previous, unchallenged program. This "hybrid" plan was unlawfully promulgated without notice and comment. Worse, it relies on the very same statute that the Missouri court declared does not authorize forgiveness.

---

[9] https://studentaid.gov/announcements-events/save-plan

**B. Defendants are wrong to contend that *Amici* States failed to challenge all forgiveness provisions in the Final Rule.**

Recognizing the obvious notice-and-comment deficiencies in the theory raised by their trial counsel, Defendants' separate appellate counsel told the Eighth Circuit something different: that the States challenged only the 10-to-19-year forgiveness provisions. *Missouri v. Biden*, Nos. 24-2332, 24-2351, *Defendants' Opposition to Emergency Motion for an Immediate Administrative Stay*.[10] That is patently untrue, and the Missouri court recognized as much. Plaintiff States have consistently made clear that they are challenging *all* ICR forgiveness provisions in the Final Rule. The complaint, for example, attacks the Final Rule in its entirety. *Missouri v. Biden*, ECF 1, at 60.[11] And *amici* States' reply brief in support of the preliminary injunction motion made clear that *amici* States "challenge the ability of Defendants to use ICR authority to engage in *any* forgiveness." *Missouri v. Biden*, ECF 26, at 61 (emphasis in original).[12]

That means that *amici* States challenged not only 10-year to 19-year forgiveness for borrowers "repaying only loans received for undergraduate study" who had original principal balances below $22,000 but also, for example, 20-year

---

[10] https://storage.courtlistener.com/recap/gov.uscourts.ca8.109302/gov.uscourts. ca8.109302.805041761.0_1.pdf

[11] https://storage.courtlistener.com/recap/gov.uscourts.moed.211135/gov.uscourts. moed.211135.1.0.pdf

[12] https://storage.courtlistener.com/recap/gov.uscourts.moed.211135/gov.uscourts. moed.211135.26.0.pdf

forgiveness for borrowers "repaying only loans received for undergraduate study." 88 Fed. Reg. 43,902–03 (amending 34 C.F.R. § 685.209).  Indeed, the Missouri court expressly found "it necessary to enjoin Defendants from *any* further implementation of the Final Rule's loan forgiveness *provisions*"—plural.  ECF 35, at 3 (emphasis added).  The Missouri court never restricted its analysis only to the 10-to-19-year provision in the Final Rule.

*     *     *

In sum, Defendants chose to streamline previous plans under one "umbrella" regulation.  Some of these provisions were new; some carried over from previous regulations.   In so doing, Defendants eliminated REPAYE as a stand-alone provision.   The *amici* States challenged *all* ICR forgiveness provisions in this regulation, and the Missouri court found it "necessary to enjoin Defendants from *any* further implementation of the Final Rule's loan forgiveness provisions."  *Id.* (emphasis added).  Defendants cannot lawfully implement a "hybrid" plan or forgive loans through an obsolete provision.  Their efforts to do so, however, underscore the need for an injunction of implementation of the Final Rule in its entirety.  Absent this relief, Defendants are likely to attempt further loan forgiveness despite a lack of authority to do so, forcing States to play whack-a-mole.

**CONCLUSION**

For the forgoing reasons, this Court should affirm the district court's preliminary injunction and further order the district court to expand the preliminary injunction to cover all provisions of the SAVE plan.

Date: July 29, 2024                    Respectfully submitted,

                                       **ANDREW BAILEY**
                                       **Missouri Attorney General**

                                       Joshua M. Divine
                                           Solicitor General
                                           *Counsel of Record*
                                       Reed C. Dempsey
                                           Deputy Solicitor General
                                       Samuel Freedlund
                                           Deputy Solicitor General
                                       OFFICE OF THE MISSOURI
                                           ATTORNEY GENERAL
                                       Supreme Court Building
                                       207 West High Street
                                       P.O. Box 899
                                       Jefferson City, MO 65102
                                       (573) 751-8870
                                       josh.divine@ago.mo.gov

                                       *Counsel for Amici States*

## ADDITIONAL COUNSEL

Tim Griffin                            Drew H. Wrigley
Attorney General                       Attorney General
State of Arkansas                      State of North Dakota

Ashley Moody                           Dave Yost
Attorney General                       Attorney General
State of Florida                       State of Ohio

Chris Carr                             Gentner Drummond
Attorney General                       Attorney General
State of Georgia                       State of Oklahoma

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,642 words as determined by the word-counting feature of Microsoft Word 2016, which is less than one-half of the 15,300 word limit for Plaintiffs-Appellees principal brief.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 2016 in 14-point proportionally spaced Times New Roman font.

In accordance with this Circuit's CM/ECF Procedures Section II(J), I also certify that this document: (1) contains no information subject to the privacy redaction requirements of Circuit Rule 25.5; (2) the hard copies to be submitted to the Clerk of the Court are exact copies of the version submitted electronically, and (3) the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Date: July 29, 2024

*/s/ Joshua M. Divine*
Joshua M. Divine

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties represented by counsel who are registered CM/ECF users.

*/s/ Joshua M. Divine*
Joshua M. Divine