No. 24-3089

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

STATE OF ALASKA, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Kansas
District Court Case No. 6:24-CV-01057-DDC-ADM (Judge Daniel D. Crabtree)

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY AND A STAY PENDING APPEAL

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
SIMON C. BREWER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7529*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5367*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.     Plaintiffs' alternative grounds for affirmance are unavailing. ............................... 1

II.    The equities favor the government. ......................................................................... 6

CONCLUSION ............................................................................................................... 9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                       **Page(s)**

*American Textile Mfrs. Inst., Inc. v. Donovan*,
   452 U.S. 490 (1981) ................................................................................................3

*Biden v. Nebraska*,
   143 S. Ct. 2355 (2023) ............................................................................................ 4

*DHS v. New York*,
   140 S. Ct. 599 (2020) .............................................................................................. 8

*DHS v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ....................................................................................................4

*Elkins v. Comfort*,
   392 F.3d 1159 (10th Cir. 2004) ...........................................................................2-3

*FDA v. Alliance for Hippocratic Med.*,
   2024 WL 2964140 (U.S. June 13, 2024) ............................................................... 2

*Labrador v. Poe ex rel. Poe*,
   144 S. Ct. 921 (2024) .......................................................................................... 8, 9

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ............................................................................................... 6

*Missouri v. Biden*,
   2024 WL 3104514 (E.D. Mo. June 24, 2024) ............................................... 3, 5, 6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ..................................................................................................5

*Murthy v. Missouri*,
   2024 WL 3165801 (U.S. June 26, 2024) ........................................................ 9, 10

*Nebraska v. Biden*,
   52 F.4th 1044 (8th Cir. 2022) .................................................................................8

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................... 6

*Perez v. Mortgage Bankers Ass'n*,
   575 U.S. 92 (2015) ..................................................................................................5

*Phillips Petroleum Co. v. EPA*,
  803 F.2d 545 (10th Cir. 1986) ...................................................................................5

*Rimbert v. Eli Lilly & Co.*,
  647 F.3d 1247 (10th Cir. 2011) ..................................................................................2

*Sherman v. Trinity Teen Sols., Inc.*,
  84 F.4th 1182 (10th Cir. 2023) ...................................................................................3

*Shinseki v. Sanders*,
  556 U.S. 396 (2009) ....................................................................................................5

*Tesone v. Empire Mktg. Strategies*,
  942 F.3d 979 (10th Cir. 2019) ....................................................................................2

**Statute:**

5 U.S.C. § 553(c) ...............................................................................................................5

**Other Authorities:**

88 Fed. Reg. 43,820 (July 10, 2023) ........................................................................... 3, 6

## INTRODUCTION

As the government's motion establishes, the need for a stay is both great and urgent. The district court's sweeping, nationwide injunction against further implementation of the SAVE plan is set to take effect today, June 30, at 10:00 PM CDT (9:00 PM MDT). If that happens, months of preparations to implement SAVE for millions of borrowers will be upended—all based on a "meager" showing of purported harms that the district court concluded "aren't all that substantial." Moreover, the injunction would preclude the implementation of portions of the Final Rule that no court—including the district court here—has ever concluded are likely unlawful. That outcome would be profoundly inequitable, and this Court should immediately stay it pending disposition of the government's appeal.

Because of the emergency nature of the relief requested, the government limits its reply here to those points raised by plaintiffs that most urgently warrant a response. In subsequent briefing of the appeal, the government will address the issues in this case in greater detail.

## ARGUMENT

### I. Plaintiffs' alternative grounds for affirmance are unavailing.

The government's motion explained why the standing and merits theories adopted by the district court fail to support the preliminary injunction. Mot. 9-17. The States lack standing because their alleged loss of interest income is illusory, and in any

event not attributable to the Department. These defects are not factual questions subject to the clear-error standard (*cf.* Resp. 5-6); instead, plaintiffs' theory fails as a matter of law. *See, e.g.*, *FDA v. Alliance for Hippocratic Med.*, 144 S. Ct. 1540, 1555-58 (2024). On the merits, the major-questions doctrine does not apply[1]; even if it did, the text of the Higher Education Act (HEA) clearly authorizes the SAVE plan, which merely adjusts the numerical thresholds in longstanding plans that plaintiffs do not challenge. Rather than repeat these arguments here, we focus on the deficiencies in the alternative grounds for affirmance urged by plaintiffs.[2]

As an initial matter, this Court should decline to consider plaintiffs' alternative grounds. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011) ("Although this court may affirm on any ground apparent in the record, affirming on legal grounds not considered by the trial court is disfavored."). That is particularly so here because the government lacks the opportunity to fully brief these issues in a reply supporting an emergency motion. *See Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir.

---

[1] Plaintiffs' half-hearted suggestion (at 8 & n.2) that the government "waived" this argument is meritless. The district court "explicitly consider[ed] and resolve[d]" the issue whether the major-questions doctrine applies, so it is properly presented on appeal. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019).

[2] Plaintiffs do not offer any alternative grounds supporting their standing. As they note, however, the government's motion (at 11) erroneously stated that Alaska's declarant hypothesized the State would lose $100,000 in interest over ten years, rather than two years. The government apologizes for the inadvertent error. As plaintiffs acknowledge (at 7 n.1), this makes no difference to the standing analysis.

2

2004) ("In exercising that discretion we consider whether the ground was fully briefed and argued here … .").

In all events, plaintiffs' alternative merits arguments are far too weak to support the injunction. *See Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1191 n.6 (10th Cir. 2023) (noting that alternative grounds should be, *inter alia*, "indisputable"). The only court to have considered substantially similar contentions soundly rejected them. *See Missouri v. Biden*, 2024 WL 3104514, at *25 (E.D. Mo. June 24, 2024) ("Plaintiffs have failed to show that they are likely to succeed on the merits of their claim that the Final Rule's cost estimate constitutes arbitrary and capricious agency action."); *id.* at *27 ("Plaintiffs' argument for a procedural violation of the APA is not likely to succeed on the merits.").

**Cost estimate.** Plaintiffs critique the Final Rule's cost estimate. Resp. 12-16. That is misplaced, as the HEA itself does not require any cost-benefit analysis, let alone a perfect one. *See American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 510 (1981) ("When Congress has intended that an agency engage in cost-benefit analysis, it has [generally] clearly indicated such intent on the face of the statute."). Plaintiffs do not suggest that the HEA requires such an estimate. Resp. 14. Rather, they suggest the issue is "waived" because the Final Rule did not discuss it. *Id.* But the Final Rule makes clear that the cost estimate was conducted in accordance with Executive Orders 12,866 and 13,563—which do not confer any judicially enforceable rights on plaintiffs. *See* 88 Fed. Reg. 43,820, 43,867 (July 10, 2023).

3

That aside, the substance of plaintiffs' argument is mistaken. They critique the Rule's analysis for incorporating the premise that the Department's invocation of the HEROES Act to cancel student loans would be upheld. Resp. 12-13. At the time, that was a reasonable judgment given the unsettled legal questions. Plaintiffs attempt to cloud it by noting that the Final Rule was published in the Federal Register on July 10, 2023, after the Supreme Court decided *Biden v. Nebraska*, 143 S. Ct. 2355 (2023). But the Secretary signed the Rule and transmitted it for publication on June 14, 2023, Dkt. 46-1, at 3—two weeks before the Supreme Court's decision in *Nebraska*.[3] Thus, the Department could not be expected to account for a yet-to-happen Supreme Court decision "when it took the action." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020). Plaintiffs cite no authority suggesting that the Department was required to revise its cost estimate for an administrative action in light of subsequent legal developments.

Although legal developments that arose after the Secretary signed the Rule may have caused that outdated estimate to understate costs, that does not demonstrate that the Department "entirely failed to consider an important aspect of the problem."

---

[3] Plaintiffs suggest that the government's declaration is contradicted by a press statement issued by Secretary that "announced that he approved the Final Rule after the Supreme Court's decision." Resp. 14. That statement, available at https://perma.cc/3Z3E-AV44, imprecisely referred to the Final Rule being "finalized," but it does not cast doubt on the government's objective evidence showing that the Final Rule was signed by the Secretary and transmitted to the Federal Register on June 14. *See* Dkt. 46-1, at 6.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). After all, the Final Rule explicitly considered costs; the Secretary just made a "reasonable" judgment "to rely on his belief that he had the authority" to cancel debts under the HEROES Act. *Missouri*, 2024 WL 3104514, at *25. Plaintiffs disagree with that decision, but "a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.

Finally, plaintiffs' one-paragraph argument (Resp. 16) about harmless error hardly meets their burden to demonstrate prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). There is little reason to think that the Secretary would have found the additional costs not to be worthwhile if they were tied to this Rule rather than to the prior plan. That reflects a common-sense judgment about how two administrative actions interact, not arbitrary decisionmaking.

*Comment period.* Plaintiffs acknowledge that the Department offered a 30-day comment period on the proposed rule, but insist that it should have offered 60 days instead. Resp. 16-17. But there is no requirement for a 60-day comment period in the APA. *See* 5 U.S.C. § 553(c) ("After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments ... ."); *see also Phillips Petroleum Co. v. EPA*, 803 F.2d 545, 559 (10th Cir. 1986). Foundational administrative law prohibits federal courts from imposing procedural requirements exceeding those set by statute. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 102 (2015) (Section 553 "established

5

the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures."). Thus, plaintiffs' references to an Administrative Conference report and various Executive Orders (which they concede are "not enforceable") are irrelevant. If any doubt remains, it should be clear that any alleged error was harmless: the Department received "13,621 comments" on the proposed rule, 88 Fed. Reg. at 43,821, and plaintiffs do not identify any additional issues that they (or others) would have raised had the comment period been longer. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 684 (2020).

## II. The equities favor the government.

The government previously explained that the equities weigh strongly in its favor. Mot. 17-20; *see Nken v. Holder*, 556 U.S. 418, 435-36 (2009). Plaintiffs fail to rebut that showing.

The government has sought a stay pending appeal in this case, and not in *Missouri*, because the two district courts entered two different injunctions. The *Missouri* court enjoined only the forgiveness of loans under the SAVE plan's shorter timelines. *Missouri*, 2024 WL 3104514, at *30. The government believes that injunction is legally unsound and should be reversed on appeal. But in the meantime, that more limited prohibition does not create anything like the chaos and confusion that will ensue if the broader injunction here goes into effect. The government's declarations, A90-118, set forth those harms at length, and plaintiffs do not, and could not, meaningfully

6

contest that showing. *See* Resp. 18-22.[4] Those harms strongly militate in favor of a stay, particularly when balanced against their harms that, at most, are "meager." A32. Plaintiffs' response—that they will suffer irreparable harm because loan forgiveness cannot be undone, Resp. 21—is a red herring. After all, the district court declined to enjoin the Final Rule's shortened timeline to forgiveness, which went into effect before July 1. A41. And forgiveness is separately blocked by the *Missouri* injunction, which the government has not sought to stay. Thus, a stay of the injunction here inflicts no harm on plaintiffs.

Plaintiffs fault the Department for notifying the public of the steps it would need to take to comply with the injunction, if it takes effect. Resp. 19. But the government has put forth evidence showing why forbearance is a necessary—but undesirable—measure to comply with the injunction. Mot.17-19; *see also* A91-92, 96-97.

---

[4] The suggestion that the inevitable disruption from multiple extreme course-changes would be "easily remediable," Resp. 21, reflects a profound misunderstanding of student loan servicing. Even assuming that, if the preliminary injunction were vacated, payments made during its pendency in excess of the amount calculated under SAVE would result in "overpayments," *id.*, determining the surplus would require servicers to look back and recreate the loan's history as if the injunction never applied, re-amortize the loan applying different payment amounts than those actually made, and set aside the difference as some separate reserve fund that is drawn down on to satisfy later payments. Neither the Department nor its servicers have a system to accomplish that. Creating such novel functionalities is a costly and time-consuming process. *See* A95-97.

7

Nor has the government delayed in seeking relief. *Contra* Resp. 19-20. After the preliminary injunctions in this case and in *Missouri* issued on Monday, June 24, the Department assessed their effects on the "multiple complex systems that require many steps and significant time to create and change." A91. By Thursday, June 27, the government had moved for a stay in the district court. *See* Dkts. 80-81. Under the circumstances, those actions are hardly foot-dragging. To the contrary, these emergency proceedings are the result of two factors: (1) plaintiffs' delay in bringing this suit until nine months after the promulgation of the Final Rule, *see* Dkt. 1; and (2) that the district court administratively stayed its sweeping, nationwide injunction for less than one week, *see* A42; Dkt. 84.

Finally, it bears mention that the emergency proceedings here illustrate the many problems associated with nationwide injunctions. *See DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). Limited relief would promote "careful deliberation," even if that comes at the cost of some "interim uncertainty about a rule's final fate." *Id.* Plaintiffs' defense of the injunction's nationwide scope (Resp. 22-24) rests almost entirely on the nationwide injunction entered by the Eighth Circuit in *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022). But the Supreme Court did not approve that injunction or address the proper scope of interim relief in that case, and the Court has since stayed "a district court's universal injunction" based on five Justices' explicit conclusion that such injunctions are likely impermissible. *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring); *see id.* (emphasizing

that "[l]ower courts would be wise to take heed"); *see also id.* at 933 n.4 (Kavanaugh, J., concurring). Accordingly, this Court should narrow the injunction pending appeal in conformity with Article III and equitable principles if it declines to grant full relief. Mot. 20-22.[5]

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be stayed pending appeal. If the Court requires additional time to consider the motion, or if it denies the motion, the Court should grant an administrative stay to permit an opportunity for further review as appropriate. *See* Mot. C-1.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
 s/ Simon C. Brewer
SIMON C. BREWER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7529*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5367*
  *Simon.C.Brewer@usdoj.gov*

June 2024

---

[5] Contrary to plaintiffs' suggestion (Resp. 26-27), the government expressly urged the district court to narrowly tailor any injunction and, if necessary, conclude that the Final Rule is severable. Dkt. 46, at 42-45.

## CERTIFICATE OF COMPLIANCE

This reply in support of a motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2255 words. It also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Simon C. Brewer*
Simon C. Brewer

# CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2024, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Simon C. Brewer*
Simon C. Brewer