

## KEN PAXTON
ATTORNEY GENERAL OF TEXAS

Aaron L. Nielson  
Solicitor General

Aaron.Nielson@oag.texas.gov  
(512) 463-2100

August 10, 2024

**VIA CM/ECF**

Mr. Christopher M. Wolpert, Clerk  
Court of Appeals for the Tenth Circuit

Re: *Alaska, et al. v. Cardona, et al.*, Nos. 24-3089, 24-3094

Dear Mr. Wolpert:

Counsel provides notice under Rule 28(j) of an order issued yesterday by the U.S. Court of Appeals for the Eighth Circuit in *Missouri v. Biden*, No. 24-2332 (8th Cir.).

Relying on *Biden v. Nebraska*, 600 U.S. 482 (2023), the Eighth Circuit explained that a coalition of States demonstrated standing and a sufficient likelihood of success on the merits that the SAVE Plan is unlawful. *See* Slip.Op.6-8. As the court explained, with a price tag of $475 billion, "[t]he SAVE plan is even larger in scope than the loan-cancellation program" in *Nebraska*, yet rather than identifying clear statutory authorization, the federal government relies on "wafer-thin reed[s]" to justify "such sweeping power." *Id.* at 6, 8. The Eighth Circuit also reiterated that the SAVE Plan "is an order of magnitude broader than anything that has come before," and "expands agency authority to such an extent that it alters it." *Id.* at 3, 7 (quoting *Alaska v. U.S. Dep't of Educ.*, 2024 WL 3104578, at *11 (D. Kan. June 24, 2024), *stay pending appeal granted*, No. 24-3089 (10th Cir. June 30, 2024), *application to vacate stay filed*, No. 24A11 (U.S. July 5, 2024)).

Accordingly, the Eighth Circuit enjoined nationwide the federal government from implementing both the SAVE Plan's forgiveness provisions and its payment-threshold provisions. The Eighth Circuit did so because the federal government has been circumventing the *Missouri* injunction's bar on direct forgiveness "through a new so-called 'hybrid rule'" that "combines the parts of SAVE that the [Missouri] district court did not enjoin, such as the payment-threshold provisions and nonaccrual of interest, with the forgiveness-of-principal provisions in REPAYE." *Id.*

at 4. The Eighth Circuit refused to let the federal government "nulli[f]y" a court order. *Id.* at 4. The Eighth Circuit also explained that "the balance of the equities" require injunctive relief to "preserve the status quo," which does not include ongoing unlawfulness. *Id.* at 9.

The Eighth Circuit's order confirms that the district court here was right to conclude that the States have standing and correctly applied the major questions doctrine, and that broad injunctive relief is warranted.

Respectfully submitted,

/s/ Aaron L. Nielson
Aaron L. Nielson
*Counsel for the State of Texas*

cc: All counsel of record (via CM/ECF)

**Attachment A:**

Order, *Missouri v. Biden*, No. 24-2332 (8th Cir.)

# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2332
_____

State of Missouri; State of Arkansas; State of Florida; State of Georgia; State of North Dakota; State of Ohio; State of Oklahoma

*Plaintiffs - Appellees*

v.

Joseph Robinette Biden, Jr., in his official capacity as President of the United States; Miguel Cardona, in his official capacity as Secretary, United States Department of Education; United States Department of Education

*Defendants - Appellants*

_____

No. 24-2351
_____

State of Missouri; State of Arkansas; State of Florida; State of Georgia; State of North Dakota; State of Ohio; State of Oklahoma

*Plaintiffs - Appellants*

v.

Joseph Robinette Biden, Jr., in his official capacity as President of the United States; Miguel Cardona, in his official capacity as Secretary, United States Department of Education; United States Department of Education

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

———————

Submitted: July 26, 2024
Filed: August 9, 2024
[Published]

———————

Before GRUENDER, ERICKSON, and GRASZ, Circuit Judges.

———————

PER CURIAM.

Before us is the motion of plaintiff States Missouri, Arkansas, Florida, Georgia, North Dakota, Ohio, and Oklahoma (collectively, the "States") seeking an injunction pending appeal preventing the United States Secretary of Education from implementing a plan to forgive approximately $475 billion in federal-student-loan debt. *See* Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43820 (July 10, 2023) (also known as the "Final Rule" or "SAVE"). We grant in part and deny in part the States' motion for the following reasons.

## I.

SAVE is the Secretary of Education's latest regulation creating a new version of the income-contingent repayment ("ICR") plan under the Higher Education Act ("HEA"). *See* 20 U.S.C. § 1087e(d)(1) (directing the Secretary to "offer a borrower of a loan made under this part a variety of plans for repayment of such loan, including principal and interest on the loan"); § 1087e(d)(1)(D) (directing the Secretary to establish an ICR plan). Before SAVE, the ICR plan was governed by the terms of a regulation known as REPAYE, and before REPAYE, it was governed by PAYE. Both REPAYE and PAYE forgave borrowers' remaining principal at the end of twenty or twenty-five years of repayment, *see* Student Assistance General

Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 80 Fed. Reg. 67204, 67204-05 (October 30, 2015); Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 77 Fed. Reg. 66088, 66088-89 (November 1, 2012), without clear authorization to do so from Congress. *See* 20 U.S.C. § 1087e(d)(1)(D); § 1098e(b)(7). However, these plans were relatively uncontroversial as they were limited in scope and less generous than income-based repayment ("IBR") plans, which Congress had specifically established to enable more-favorable repayment terms and ultimately loan forgiveness for borrowers who could demonstrate financial hardship. *See* § 1098e(b)(7) (requiring that "the Secretary shall repay or cancel any outstanding balance of principal and interest due" once an IBR borrower meets certain requirements). The new SAVE plan, by contrast, is an order of magnitude broader than anything that has come before. Its altered payment-threshold provisions significantly lower payment amounts, often to $0 per month. *See* 88 Fed. Reg. 43828-29, 43833, 43901-02. SAVE additionally does not charge borrowers accrued interest and forgives principal balances much sooner, *see id.*, and sets up a sliding-scale loan-forgiveness calculation under which loans can be forgiven in as little as 10 years. *Id.* at 43891, 43902-03. The net result is that millions of borrowers who opt-in to SAVE will pay nothing towards their principal balance, nothing towards interest, and then will have their untouched principal balance forgiven sooner. *See* Press Release, The White House, FACT SHEET: President Biden Cancels Student Debt for more than 150,000 Student Loan Borrowers Ahead of Schedule (Feb. 21, 2024), https://www.whitehouse.gov/briefing-room/statements-releases/2024/02/21/fact-sheet-president-biden-cancels-student-debt-for-more-than-150000-student-loan-borrowers-ahead-of-schedule.

The plaintiff States sued President Joseph R. Biden, Secretary of Education Miguel A. Cardona, and the United States Department of Education (collectively, the "Government") to enjoin prospectively the implementation of SAVE. The district court granted in part the States' motion for a preliminary injunction after finding that at least one plaintiff, Missouri, had established standing through its state

-3-

instrumentality—the Higher Education Loan Authority of the State of Missouri ("MOHELA")—and that MOHELA was facing "certain" irreparable harm. The district court concluded that the States had shown a "fair chance" of success on the merits of their claims both that loan forgiveness is not statutorily authorized for any ICR plan and that SAVE violates separation of powers under the major-questions doctrine. However, the district court only enjoined the ultimate forgiveness of loans, finding that the States had not shown irreparable harm with respect to the payment-threshold provisions and the nonaccrual of interest.

Despite the district court's injunction, the Government continues to forgive loans for borrowers enrolled in SAVE. It does so through a new so-called "hybrid rule." The Government's hybrid rule combines the parts of SAVE that the district court did not enjoin, such as the payment-threshold provisions and nonaccrual of interest, with the forgiveness-of-principal provisions in REPAYE. Through this hybrid plan, the Government has been able to make it such that borrowers who, prior to the district court's preliminary injunction, made reduced or $0 payments pursuant to SAVE before ultimately being forgiven the remainder of their balance are now, after the district court's preliminary injunction, still making the same reduced or $0 payments pursuant to SAVE and are still ultimately being forgiven the remainder of their loan balance pursuant to REPAYE. Indeed, the Government concedes as much. *See* Resp. in Opp'n to Emergency Mot. for Inj. Pending Appeal at 19-20 (acknowledging that "[a]s a result [of the injunction], . . . the REPAYE plan was partly amended and renamed [to SAVE], governed by the terms of the Final Rule *except* for the criteria regarding time to forgiveness, which reverted to the terms of the original REPAYE plan"). The Government's hybrid plan was created after and in response to the district court's preliminary injunction and has effectively rendered that injunction a nullity. As a result of the hybrid plan, the only practical effect of the district court's injunction is that borrowers formerly enrolled under SAVE and now enrolled under the hybrid plan will not be eligible for loan forgiveness until they have been making payments for at least 20 years, as opposed to as early as 10 years. But their payments are often $0 per month pursuant to the non-enjoined parts

of SAVE, and after twenty years of $0 payments, the loans may still be entirely forgiven.

The Government appealed the district court's injunction. The States cross-appealed, seeking an expanded injunction pending appeal in the district court. The district court denied this motion before the Government could file a response. As the Government's hybrid plan took shape, the States moved to clarify the scope of the preliminary injunction in the district court, asking the district court to clarify that its preliminary injunction "prohibits [the Government] from using ICR authority to forgive loans for any borrowers enrolled in the SAVE plan." The district court denied the motion. The States then sought an injunction pending appeal in this court. In light of the Government's post-injunction actions, we administratively stayed implementation of the hybrid rule on July 18 until the parties could fully brief the emergency motion for an injunction pending appeal.

## II.

We now turn to the merits of the States' emergency motion for an injunction pending appeal. Like the Government's last attempt to engage in mass student-loan cancellation, "[w]hatever the eventual outcome of this case, it will affect the finances of millions of Americans with student loan debt as well as those Americans who pay taxes to finance the government and indeed everyone who is affected by such far-reaching fiscal decisions." *Nebraska v. Biden* (*Nebraska I*), 52 F.4th 1044, 1045 (8th Cir. 2022). "As such, we approach the motion before us with great care." *Id.*

"In ruling on a request for an injunction pending appeal, the court must engage in the same inquiry as when it reviews the grant or denial of a preliminary injunction." *Id.* at 1046; *see Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982). "[A] district court may grant a preliminary injunction when a movant shows [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest . . . ." *Cigna Corp. v. Bricker*, 103

Appellate Case: 24-2332     Page: 5     Date Filed: 08/09/2024 Entry ID: 5422990

F.4th 1336, 1342 (8th Cir. 2024) (internal quotation marks omitted). "While no single factor is determinative, the probability of success factor is the most significant." *Id.* "A movant shows a likelihood of success on the merits when [he] demonstrates a fair chance, not necessarily greater than fifty percent, that [he] will ultimately prevail under applicable law." *Id.* at 1343 (internal quotation marks omitted). "In circumstances where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less." *Nebraska I*, 52 F.4th at 1046 (internal quotation marks omitted); *see also Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir. 1978) ("If the balance tips decidedly towards the plaintiffs and the plaintiffs have raised questions serious enough to require litigation, ordinarily the injunction should issue.").

As a threshold matter, we agree with the district court that "[t]he allegations in the Complaint are substantially similar to, if not identical to, those the Supreme Court held were sufficient to establish Missouri's standing just last year in *Biden v. Nebraska*" (*Nebraska II*), 600 U.S. ----, 143 S. Ct. 2355 (2023), and thus that at least one of the States, Missouri, has standing to sue. *See Nebraska I*, 52 F.4th at 1046-47.

Next, we turn to the "most significant" factor—the likelihood of success on the merits. *See Cigna Corp.*, 103 F.4th at 1342. The States have demonstrated at least a "fair chance" that they will ultimately prevail under applicable law. *Id.* at 1343. The SAVE plan is even larger in scope than the loan-cancellation program at issue in *Nebraska II*, 143 S. Ct. at 2369. According to the same budget model issued by the Wharton School of the University of Pennsylvania cited in *Nebraska II*, SAVE is anticipated to forgive an estimated $475 billion dollars in student loans. *See id.* at 2373; *Biden's New Income-Driven Repayment ("SAVE") Plan: Budgetary Cost Estimate Update*, Penn Wharton Budget Model (July 17, 2023). The Government's asserted authority to implement SAVE rests on the HEA's directive to the Secretary of Education to establish "an income contingent repayment plan, with varying annual repayment amounts based on the income of the borrower, paid over an extended period of time prescribed by the Secretary, not to exceed 25 years."

-6-

20 U.S.C. § 1087e(d)(1)(D). We agree with the district court that the Government's "interpretation" of this provision to authorize loan forgiveness of this magnitude "is questionable," especially in light of the fact that "other portions of the HEA . . . explicitly permit loan forgiveness," such as IBR plans. *See* 20 U.S.C. § 1098e(b)(7) (requiring that "the Secretary shall repay or cancel any outstanding balance of principal and interest due" once an IBR borrower meets certain requirements). The clear statutory requirement that loans in certain programs, such as IBR plans, be canceled, coupled with statutory silence regarding forgiveness under ICR plans, suggests that—as the district court concluded—"Congress has made it clear under what circumstances loan forgiveness is permitted, and the ICR plan is not one of those circumstances."

Moreover, the Government's assertion that it has "discover[ed] in a long-extant statute an unheralded power to regulate a significant portion of the American economy" requires us to "greet [that] announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (internal quotation marks omitted). The economic impact of SAVE is roughly nine times larger than the $50 billion that triggered heightened scrutiny in *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764 (2021). We agree with the United States District Court for the District of Kansas, which also preliminarily enjoined SAVE in a case that is now pending before the United States Supreme Court, that the expansion of ICR plans from a program costing roughly $15 billion to $475 billion "expands agency authority to such an extent that it alters it." *Alaska v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, 2024 WL 3104578, at *11 (D. Kan. June 24, 2024), *stay pending appeal granted*, No. 24-3089 (10th Cir. June 30, 2024), *application to vacate stay filed*, No. 24A11 (U.S. July 5, 2024); *see Nebraska II*, 143 S. Ct. at 2369 ("The Secretary's plan has modified the cited provisions only in the same sense that the French Revolution modified the status of the French nobility." (internal quotation marks omitted)). Here the Government asserts that it has discovered in a few provisions of the HEA the authority to forgive hundreds of millions of dollars' worth of student loans, 3,000 percent more than has ever been forgiven under any previous ICR program. In light of this vast assertion of newfound power, the major-questions

doctrine requires that "something more than a merely plausible textual basis for the agency action is necessary" in order to uphold the regulation. *West Virginia v. EPA*, 597 U.S. 697, 723 (2022). But the text of the HEA makes a showing of even mere plausibility difficult, given that it demonstrates that "Congress opted to make debt forgiveness available only in a few particular exigent circumstances," *Nebraska II*, 143 S. Ct. at 2369, such as IBR plans, *see* 20 U.S.C. § 1098e(b)(7). Moreover, the Government's asserted ability to forgive student loans through ICR plans rests on § 1087e(d)(1)(D)'s requirement that the Secretary offer "an income contingent repayment plan, with varying annual repayment amounts based on the income of the borrower, paid over an extended period of time prescribed by the Secretary, not to exceed 25 years" and § 1087e(e)(4)'s requirement that "[i]ncome contingent repayment schedules shall be established by regulations promulgated by the Secretary and shall require payments that vary in relation to the appropriate portion of the annual income of the borrower . . . as determined by the Secretary." These are "wafer-thin reed[s] on which to rest such sweeping power." *Nebraska II*, 143 S.Ct. at 2371. On initial review, the States have the better of the arguments on these "substantial questions of law which remain to be resolved." *Nebraska I*, 52 F.4th at 1047.

As to irreparable harm, the Government concedes that it continues to forgive loans for borrowers enrolled in SAVE pursuant to the hybrid rule despite the district court's injunction. *See* Resp. in Opp'n to Emergency Mot. for Inj. Pending Appeal at 19-20. As discussed above, the Government's actions have resulted in there being almost no practical difference in loan forgiveness for borrowers enrolled in SAVE before and after the district court's preliminary injunction, rendering the injunction largely a nullity. In short, the Government continues to work the same irreparable harm on MOHELA that the district court sought to enjoin.

Lastly, when balancing the equities, "the key question is whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction in place." *Cigna Corp.*, 103 F.4th at 1347; *Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1018 (8th Cir. 2023) ("The third and fourth

-8-

Appellate Case: 24-2332    Page: 8    Date Filed: 08/09/2024 Entry ID: 5422990

factors for a preliminary injunction—harm to the opposing party and the public interest—merge when the Government is the party opposing the preliminary injunction."). Among the considerations here are that all borrowers currently impacted by our administrative stay are in administrative forbearance and thus not required to pay principal or interest on their loans, borrowers who have remained in PAYE and REPAYE plans are not impacted, and the States cannot turn back the clock on any loans that have already been forgiven. *See Nebraska I*, 52 F.4th at 1047-48. We conclude that the balance of the equities in this case require us to intervene to preserve the status quo pending the Government's appeal of the district court's order. *See id.* at 1048.

In doing so, "we have carefully considered . . . the scope of any temporary relief." *Id.* "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Id.* (quoting *Trump v. Int'l Refugee Assistance Project*, 581 U.S. 571, 579 (2017)). We look to craft an injunction that is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id.* (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)); *see also id.* (discussing the scope of an emergency injunction pending appeal). We therefore grant in part and deny in part the States' emergency motion for an injunction pending appeal to prohibit the use of the hybrid rule to circumvent the district court's injunction.

### III.

The Government is, for any borrower whose loans are governed in whole or in part by the terms of the Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43820, enjoined from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions. This injunction will remain

Appellate Case: 24-2332   Page: 9   Date Filed: 08/09/2024 Entry ID: 5422990

in effect until further order of this court or the Supreme Court of the United States. The administrative stay is hereby superseded.

_____