**[ORAL ARGUMENT SCHEDULED FOR AUGUST 21, 2024]**

Nos. 24-3089, 24-3094

# In the United States Court of Appeals for the Tenth Circuit

───────

STATES OF ALASKA, SOUTH CAROLINA, AND TEXAS,

                                  Plaintiffs-Appellees / Cross-Appellants,

*v.*

MIGUEL CARDONA, SECRETARY OF EDUCATION, ET AL.,

                                  Defendants-Appellants / Cross-Appellees.

───────

On Appeal from the United States District Court
for the District of Kansas
District Court Case No. 6:24-CV-01057-DDC-ADM (Judge Daniel D. Crabtree)

───────

**PLAINTIFF STATES' SUPPLEMENTAL BRIEF**

───────

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | AARON L. NIELSON<br>Solicitor General<br>Aaron.Nielson@oag.texas.gov |
| BRENT WEBSTER<br>First Assistant Attorney General | LANORA PETTIT<br>Principal Deputy Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | JACOB C. BEACH<br>Assistant Solicitor General<br>Counsel for Texas |

**ADDITIONAL COUNSEL IN SIGNATURE BLOCK**

# Table of Contents

Page

Table of Authorities ..................................................................................... ii
Glossary ..................................................................................................... iii
Introduction ................................................................................................. 1
Background ................................................................................................. 2
Argument ..................................................................................................... 7
    I.    The Eighth Circuit's Injunction Covers All Major SAVE Plan Provisions. ................................................................................... 7
    II.   The Eighth Circuit's Injunction Supports Broad Equitable Relief. ............ 9
        A.   The injunction further confirms the States' standing. ........................ 9
        B.   The injunction dooms Defendants' balance-of-harms arguments. ................................................................................... 10
        C.   The injunction underscores the States' entitlement to broad relief. ............................................................................................. 11
Conclusion ................................................................................................. 12
Certificate of Service ................................................................................. 14
Certificate of Compliance .......................................................................... 14

## Table of Authorities

Page(s)

**Cases:**

*Alaska v. U.S. Dep't of Educ.*,
   2024 WL 3104578 (D. Kan. June 24, 2024) .................................................................... 9

*Biden v. Nebraska*,
   600 U.S. 482 (2023) ............................................................................. 1, 3, 4, 5, 8, 9, 10

*California v. Texas*,
   593 U.S. 659 (2021) ........................................................................................................ 9

*Dep't of Commerce v. New York*,
   588 U.S. 752 (2019) ........................................................................................................ 9

*Missouri v. Biden*,
   No. 24-2332, 2024 WL 3738157 (8th Cir. Aug. 9, 2024) .... 1, 3, 4, 5, 6, 7, 9, 11, 12

*Missouri v. Biden*,
   2024 WL 3104514 (E.D. Mo. June 24, 2024) ............................................................ 4, 5

*Ohio v. EPA*,
   144 S.Ct. 2040 (2024) ..................................................................................................... 8

*Prometheus Radio Project v. FCC*,
   652 F.3d 431 (3d Cir. 2011) ........................................................................................... 8

*West Virginia v. EPA*,
   597 U.S. 697 (2022) ........................................................................................................ 8

**Other Authorities:**

Application, *Biden v. Missouri*, No. 24A173 (Aug. 13, 2024) ....................... 1, 11, 12

Letter, *Alaska v. Dep't of Educ.*, No. 24A11 (Aug. 10, 2024) ................................... 8

Opposition, *Missouri v. Biden*, No. 24-2332 (8th Cir. Jul. 19, 2024) ..................... 10

Response, *Alaska v. Dep't of Educ.*, No. 24A11 (Jul. 17, 2024) ................................. 5

# Glossary

| Abbreviation | Description |
| --- | --- |
| APA | Administrative Procedure Act |
| Department | Department of Education |
| HEA | Higher Education Act of 1965 |
| ICR Plan | Income-contingent repayment Plan |
| REPAYE Program | Revised Pay As You Earn Program |
| MOHELA | Missouri Higher Education Loan Authority |
| SAVE Plan | Saving on a Valuable Education Plan |
| Secretary | Miguel Cardona |
| The Rule | Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program/ SAVE Plan |

# Introduction

On August 9, 2024, the U.S. Court of Appeals for the Eighth Circuit issued a nationwide injunction pending appeal with respect to every major provision of the SAVE Plan. *See Missouri v. Biden (Missouri II)*, No. 24-2332, 2024 WL 3738157, at *4 (8th Cir. Aug. 9, 2024). Relying on *Biden v. Nebraska*, 600 U.S. 482 (2023), the Eighth Circuit explained that the States of Missouri, Arkansas, Florida, Georgia, North Dakota, Ohio, and Oklahoma (collectively, "Missouri") have shown a sufficient likelihood of success on their claims that the Plan fails the major questions doctrine. Indeed, with a price tag of $475 billion, the Eighth Circuit observed, "[t]he SAVE plan is even larger in scope than the loan-cancellation program" in *Nebraska*. 2024 WL 3738157 at *3. Yet Defendants again rely on "wafer-thin reed[s]" to justify "such sweeping power." *Id.* (quoting *Nebraska*, 600 U.S. at 499).

The Eighth Circuit entered a broad injunction because Defendants have been circumventing the Eastern District of Missouri's preliminary injunction "through a new so-called 'hybrid rule'" that results in "payments" that "are often $0 per month" and will be "entirely forgiven" "after twenty years of $0 payments." *Id.* at *2. The Eighth Circuit accordingly enjoined the federal government "from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions" with respect to "any borrower whose loans" are subject to the plan. *Id.* at *4. On August 13, the federal government applied to the Supreme Court to vacate that injunction or to grant certiorari before judgment. *See* Application, *Biden v. Missouri*, No. 24A173 (Aug. 13, 2024). That application remains pending.

Even apart from the possibility that the Supreme Court will grant certiorari before judgment, the Eighth Circuit's injunction has significant implications for this Court. *First*, that injunction covers each provision that has been the focal point of this litigation. Accordingly, although the injunction does not extend to certain ancillary provisions of the SAVE Plan that ultimately should be vacated, so long as it remains in effect, expedited proceeding are less warranted because Defendants will not be able to give away hundreds of billions of dollars.

*Second*, in addition to confirming the SAVE Plan's illegality, the Eighth Circuit's injunction should affect this Court's analysis in at least three respects. To begin, it provides additional reason to conclude that Plaintiff States have standing here. Indeed, Defendants unsuccessfully raised many of the same standing arguments to the Eighth Circuit that they urge in this Court. Further, the Eighth Circuit's injunction vitiates Defendants' arguments sounding in administrative burdens or borrower "confusion." To the contrary, the only way this Court can prevent confusion is to *agree* with the Eighth Circuit. Additionally, the Eighth Circuit's injunction further underscores why the States here are entitled to broad injunctive relief.

## Background

**1.** The SAVE Plan builds on the now-inoperative REPAYE Program and is centered around three core, mutually reinforcing provisions that together cancel either *de jure* or *de facto* hundreds of billions of dollars' worth of loans. First, it contains **(i)** loan forgiveness provisions that accelerate forgiveness by shortening the timeline for paying off loans from 20 years to 10, after which any outstanding balance would be forgiven. App.Vol.II, at 508. Associated with these provisions is the rule that loans

do not accrue interest. *Id.* at 508. Second, the SAVE Plan contains two payment-threshold provisions, *viz.*, its **(ii)** redefinition of what constitutes "discretionary" income as anything above 225% of the federal poverty line (up from 150%), and **(iii)** a revised cap that decreases monthly payments from 10% of discretionary income to 5%. *Id.* at 507-08. The Eighth Circuit refers to the "payment-threshold provisions" collectively, *id.*, whereas the Plaintiff States and District of Kansas Court refer to each provision individually.

After *Nebraska*, these provisions are worth more than a hundred billion dollars and combined—using the Wharton budget model that the Supreme Court relied on in *Nebraska*—the cost is $475 billion. *Missouri II*, 2024 WL 3738157, at *3. The following chart breaks down that price tag by each major provision:

| | Forgiveness | Revised Caps | Income Redefinition | Total Costs |
|---|---|---|---|---|
| **SAVE Plan Costs** (dollar amounts, in billions) | | | | |
| Final Rule[1] | 13 | 59 | 71 | 156 |
| Post-*Nebraska*[2] | 39 | 177 | 213 | 475 |

---

[1] *Final Rule*, 88 Fed. Reg. at 43,889 (Tbl. 5.4).

[2] The States derive these numbers from the Wharton model's estimate ($475 billion). *See* App.Vol.II, at 522. The SAVE Plan's key provisions, of course, do not account for the Final Rule's entire costs. Defendants' objections to Wharton model's estimate ring hollow because Defendants declined to offer their own analysis when invited to do so during rulemaking.

3

Because the Wharton model does not break down individual provisions but instead finds that the entire cost of the SAVE Plan is approximately three times greater than the cost announced in the Final Rule, the States have multiplied the costs of each broad category by three. This chart also combines the cost of forgiven accrued loan interest with the general cost of loan forgiveness.

**2.** Two coalitions of States challenged the SAVE Plan and advanced similar arguments, with particular emphasis on *Nebraska*. In particular, the thrust of both suits is that the SAVE Plan and associated Final Rule is unlawful because the Higher Education Act's authorization to create ICR plans does not permit forgiveness but instead requires repayment of loans. Yet the SAVE Plan's loan-forgiveness (which enables *de jure* forgiveness) and payment-threshold provisions (which enable *de facto* forgiveness) do not require such repayment. *See, e.g.*, *Missouri II*, 2024 WL 3738157, at *1; App.Vol.II at 518-25. Both groups of State also raised APA and constitutional arguments. App.Vol.II, at 510; *Missouri v. Biden (Missouri I)*, No. 4:24-CV-00520-JAR, 2024 WL 3104514, at *27 (E.D. Mo. June 24, 2024).

These cases were both filed in early spring 2024, and the District of Kansas and the Eastern District of Missouri entered preliminary injunctions on June 24, 2024. The *Missouri* injunction enjoined implementation of "th[e] provisions of the SAVE Plan that permit loan forgiveness," *Missouri I*, 2024 WL 3104514, at *30, while the *Alaska* injunction (the subject of this appeal) enjoined the same, along with the SAVE Plan's payment-threshold provisions, albeit as applied after July 1, 2024. App.Vol.II at 538, 540-41. The district courts' analyses were similar. Both followed *Nebraska* to conclude that the major questions doctrine applied, *see Missouri I*, 2024

WL 3104514, at *23; App.Vol.II at 513-14; concluded that the HEA does not permit loan forgiveness through ICR plans and certainly not clearly (as is required), *see Missouri I*, 2024 WL 3104514, at *22; App.Vol.II at 518-25; and ordered nationwide injunctive relief, *see Missouri I*, 2024 WL 3104514, at *30; App.Vol.II at 534-38.

The two district courts also found standing for similar reasons. Both sets of States argued that the SAVE Plan causes pocketbook injuries because of the loss of servicing fees and interest income. *Missouri I*, 2024 WL 3104514, at *8; App.Vol.II, at 437. The Eastern District of Missouri focused on servicing fees because that case involved the same Missouri entity (the Missouri Higher Education Loan Authority) and virtually same theory the Supreme Court accepted in *Nebraska*. *See Missouri I*, 2024 WL 3104514, at *18. The District of Kansas, by contrast, focused on lost revenue given uncontroverted evidence that, *inter alia*, Alaska would lose $100,000 from the SAVE Plan's implementation as borrowers consolidated loans into direct federal loans, thus costing the States interest revenue. App.Vol.II, at 532.

**3.** These cases' paths diverged on appeal. Defendants moved to stay the *Alaska* injunction but not the *Missouri* injunction because of the injunctions' different scopes. *See* Response at 13, *Alaska v. Dep't of Educ.*, No. 24A11 (Jul. 17, 2024). After this Court entered a stay on June 30, 2024, the only thing stopping Defendants from giving away billions of dollars was the *Missouri* injunction. Defendants decided to continue forgiving loans by using the SAVE Plan's payment-threshold provisions to set $0 monthly payments, while promising that the entire amount owed would be forgiven after twenty years under the defunct REPAYE Program. *Missouri II*, 2024 WL 3738157, at *2. In other words, Defendants claimed

that although the SAVE Plan's Final Rule replaced the REPAYE Program, parts of that earlier program essentially sprang back to life to allow Defendants to create a "hybrid plan" that combines the SAVE Plan's payment-threshold provisions with the REPAYE Program's twenty-year forgiveness provisions. *Id.*

**4.** After the Eastern District of Missouri refused to extend its injunction to bar such *de facto* loan forgiveness, Missouri requested emergency relief from the Eighth Circuit because Defendants' "hybrid plan"—which never went through notice-and-comment rulemaking—contravened the district court's injunction's command to cease implementing SAVE Plan provisions "that permit loan forgiveness." *Id.* The Eighth Circuit administratively stayed the entire SAVE Plan on July 18, 2024, and then on August 9, 2024, enjoined Defendants nationwide "from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions" with respect to "any borrower whose loans" are subject to the plan. *Id.* at *2, *4.

The Eighth Circuit explained "that loan forgiveness is not statutorily authorized for any ICR plan[,]" *id.* at *2, yet "the Government concedes that it continues to forgive loans for borrowers enrolled in SAVE pursuant to [a] hybrid rule despite the district court's injunction[,]" *id.* at *4. To afford Missouri complete relief, the Eighth Circuit extended the *Missouri* injunction beyond *de jure* loan forgiveness to include each of the SAVE Plan's major provisions, thus also barring *de facto* loan forgiveness via the plan's payment-threshold provisions. *Id.* The Eighth Circuit did so to prevent Defendants from circumventing the *Missouri* injunction "through a new so-called 'hybrid rule'" that "combines the parts of SAVE that the district

6

court did not enjoin, such as the payment-threshold provisions and nonaccrual of interest, with the forgiveness-of-principal provisions in REPAYE." *Id.* at *2. The Eighth Circuit, however, permitted certain ancillary provisions to go into effect, such as those discussed at the end of the Defendants' opening brief to this Court.

## ARGUMENT

The Court has directed the parties to "file supplemental briefs (1) defining the scope of the Eighth Circuit's injunction and (2) explaining how (if at all) the Eighth Circuit's injunction affects this court's analysis." The answers to those questions are straightforward. As to (1), the Eighth Circuit's nationwide injunction covers every major provision of the SAVE Plan for every borrower—including the provisions that have been the focal point of the parties' briefing in this Court.

As to (2), even beyond confirming that the SAVE Plan flunks the major questions doctrine, the Eighth Circuit's nationwide injunction should have significant implications for this Court's analysis in at least three respects. The injunction (A) confirms that the States here have standing; (B) bars Defendants from credibly invoking administrative burdens or borrower confusion; and (C) underscores why the States here are also entitled to broad, nationwide injunctive relief.

## I. The Eighth Circuit's Injunction Covers All Major SAVE Plan Provisions.

The Eighth Circuit's nationwide injunction enjoins Defendants from implementing every major provision of the SAVE Plan with respect to any borrower. The only provisions it did not enjoin are ancillary provisions. Thus, in the wake of the Eighth Circuit's injunction, Texas promptly informed the Supreme Court that the Plaintiff States here do not require emergency relief so long as that injunction is in

7

place. *See* Letter at 2, *Alaska v. Dep't of Educ.*, No. 24A11 (Aug. 10, 2024).

The breadth of the Eighth Circuit's nationwide injunction also explains why the U.S. Solicitor General has requested emergency relief from the Supreme Court. Notably, this is essentially a repeat of *Nebraska*, where the federal government went to the Supreme Court for emergency relief after the Eighth Circuit entered a nationwide injunction. In *Nebraska*, of course, the Supreme Court granted certiorari before judgment and held that "'the basic and consequential tradeoffs' inherent in a mass debt cancellation program 'are [questions] that Congress would likely have intended for itself.'" 600 U.S. at 506 (quoting *West Virginia v. EPA*, 597 U.S. 697, 730 (2022)). The Court thus refused to allow Defendants to give away $430 billion, *id.* at 504, and left in place the Eighth Circuit's nationwide injunction.

To be clear, the ultimate relief Plaintiff States seek here is broader than what the Eighth Circuit's injunction provides. The Eighth Circuit left in place ancillary provisions and so granted Missouri's motion only in part. Even those ancillary provisions, however, should be vacated at final judgment given Defendants' APA violations. The Final Rule ignores *Nebraska*'s tripling of the SAVE Plan's costs and expresses Defendants' confidence that they would prevail in *Nebraska* even though they had *already* lost *Nebraska* ten days earlier. Defendants' deliberate refusal to consider the actual costs of the SAVE Plan is the antithesis of a "reasoned response," *Ohio v. EPA*, 144 S.Ct. 2040, 2054 (2024), and taints the Final Rule in its entirety. Furthermore, Defendants' failure to provide a meaningful period for notice-and-comment rulemaking is structural error that dooms the entire rulemaking. *See, e.g.*, *Prometheus Radio Project v. FCC*, 652 F.3d 431, 453 (3d Cir. 2011).

## II. The Eighth Circuit's Injunction Supports Broad Equitable Relief.

The Eighth Circuit's application of the major questions doctrine speaks for itself and confirms the district court's analysis here. Indeed, not only have Defendants raised virtually identical merits arguments in both cases, but the Eighth Circuit relied on the district court's analysis in this litigation to conclude that the SAVE Plan "is an order of magnitude broader than anything that has come before" and "expands agency authority to such an extent that it alters [that authority]." *Id.* at 3, 7 (quoting *Alaska v. U.S. Dep't of Educ.*, No. 24-1057-DDC-ADM, 2024 WL 3104578, at *11 (D. Kan. June 24, 2024)). The Eighth Circuit's decision, however, also supports broad equitable relief here in at least three additional respects.

### A. The injunction further confirms the States' standing.

To begin, the Eighth Circuit easily concluded that Missouri's injury was sufficient to proceed to the merits. *Missouri II*, 2024 WL 3738157, at *3. This is significant because, as explained above, the standing theories alleged this case and that case largely overlap. The Eastern District of Missouri focused on fees rather than interest given *Nebraska*'s holding regarding MOHELA. By contrast, the district court here focused on revenue, which is hardly surprising given that Alaska offered unrebutted evidence of a $100,000 loss in revenue when borrowers consolidate their loans because of the SAVE Plan. Both theories are equally straightforward, especially because courts may rely upon "the predictable effect of Government action[s] on the decisions of third parties," *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019), including that people will "enroll in valuable benefits programs" if given the opportunity, *California v. Texas*, 593 U.S. 659, 678 (2021).

Notably, Defendants' attacks on standing in this case overlap with their attacks on standing before the Eighth Circuit. There, as here, Defendants raised arguments about offsetting benefits, the time value of money, and traceability. *Compare* Resp. at 11, *Missouri v. Biden*, Nos. 24-2332, 242351 (8th Cir. July 19, 2024) (offsetting benefits), *id.* at 12 (time value of money), and *id.* at 12-13 (traceability), *with* Defendants' First Brief at 16-18 (offsetting benefits), *id.* (time value of money), *id.* at 19-21 (traceability). The Eighth Circuit rejected such attacks on plain pocketbook injury, and this Court should do the same, especially given the clear-error standard of review.

**B. The injunction dooms Defendants' balance-of-harms arguments.**

The Eight Circuit's injunction enjoins implementation of all the SAVE Plan's key provisions, meaning that the only harms offered by Defendants in the balance-of-harms analysis—alleged administrative costs and borrower confusion—are no longer plausible. The States have made this observation with respect to the Eighth Circuit's administrative stay, but now the point is even more obvious. Any administrative burdens associated with enjoining the SAVE Plan have already been incurred. And any borrower confusion—which is unlikely to have ever existed, given that borrowers saw this same process play out last year in *Nebraska*—is now beside the point. All this Court can do is create confusion by disagreeing with the Eighth Circuit, but nothing the Court says or does can displace the Eighth Circuit's injunction.

The Eighth Circuit, moreover, also in large part rejected the delay arguments that Defendants press here. Plaintiff States filed their suit roughly two weeks before Missouri, and both groups of States received preliminary relief on the same day. Defendants argued to the Eighth Circuit, as here, that the States' supposed delay in

10

bringing suit counsels against injunctive relief. The Eighth Circuit disagreed and held that although it would not unwind prior forgiveness, it would not allow Defendants to engage in any more unlawful conduct. *Missouri II*, 2024 WL 3738157, at *4. Although the States disagree with respect to prior forgiveness, the Eighth Circuit's analysis defeats any suggestion that prospective relief should be barred.

### C. The injunction underscores the States' entitlement to broad relief.

Finally, the Eighth Circuit's injunction underscores why the Plaintiff States here are entitled to expansive injunctive relief. Broad relief is warranted for the reasons the Eighth Circuit articulated, which are equally relevant here. But it is also warranted because of representations made by the U.S. Solicitor General to the Supreme Court about how the SAVE Plan works, as well as the now demonstrated point that absent broad injunctive relief, Defendants will continue to try to give away the public's money in advance of the election.

The U.S. Solicitor General has asked the Supreme Court to vacate the Eighth Circuit's injunction. The application acknowledges that implementing the SAVE Plan provisions that Defendants began to execute before the July 1, 2024 effective date is a process that is ongoing, if started at all, for most borrowers. Indeed, the application admits that "vacating the injunction would simply affect the monthly payment amounts owed by some borrowers while these cases continue to be litigated." Application, *Missouri*, No. 24A173, at 5. This admission fatally undermines Defendants' argument that "implementing" a provision is a static event and confirms that the only way to read the district court's injunction here is as preventing every application of every provision of the SAVE Plan after July 1 for millions of

borrowers at a cost that will grow to hundreds of billions of dollars. *See Missouri II*, 2024 WL 3738157, at *4 (enjoining Defendants from "further implementing SAVE's payment-threshold provisions"). In fact, Defendants (apparently) only spent $1.2 billion over 152,000 borrowers before the States sought a preliminary injunction. App.Vol.I, at 32. If the district court permitted nearly all the unlawful program to continue, Defendants' representation to the Supreme Court about how implementation works demonstrates why such a ruling would be an abuse of discretion.

Similarly, Defendants represented to the Supreme Court that vacating the Eighth Circuit's injunction pending further litigation would be a "modest step" that "would impose no cognizable injury on the States." Application, *Missouri*, No. 24A173, at 5. Because standing is very much disputed in that case, that representation—which, to be sure, is somewhat cryptic—seems to suggest agreement that a court can order Defendants to unwind loan modification for borrowers whose loans were modified before July 1.

Finally, in evaluating injunctive relief, the Court should not lose sight of the fact that Defendants have attempted to circumvent one injunction and the President has boasted that the Supreme Court did not stop him from mass cancelation. Defendants' "hybrid plan" is more of the same. The Eighth Circuit was right to put a stop to this unlawful agency behavior, and the Court should do the same.

## Conclusion

The Court should follow the Eighth Circuit and award broad injunctive relief.

Respectfully submitted.

| | | |
|---|---|---|
| **ALAN WILSON** <br> Attorney General of South Carolina <br><br> /s/ Joseph D. Spate <br> JOSEPH D. SPATE <br> Assistant Deputy Solicitor General <br><br><br> /s/ Abhishsek S. Kambli <br> ABHISHEK S. KAMBLI <br> Special Counsel <br><br><br> South Carolina Attorney General's Office <br> Robert C. Dennis Building <br> P.O. Box 11549 <br> Columbia, South Carolina 29211-1549 <br> Tel: (803) 734-3711 <br><br><br> *Attorneys for the State of South Carolina* | **KEN PAXTON** <br> Attorney General of Texas <br><br> BRENT WEBSTER <br> First Assistant Attorney General <br><br> /s/ Aaron L. Nielson <br> AARON L. NIELSON <br> Solicitor General <br> *Counsel of Record* <br><br> Jacob C. Beach <br> Assistant Solicitor General <br><br> Texas Attorney General's Office <br> P.O. Box 12548 (MC 059) <br> Austin, Texas 78711-2548 <br> Tel.: (512) 936-1700 <br> Fax: (512) 474-2697 <br><br> *Attorneys for the State of Texas* | **TREG TAYLOR** <br> Attorney General of Alaska <br><br> /s/William E. Milks <br> WILLIAM E. MILKS <br> Chief Assistant Attorney General <br><br> Jessica M. Alloway <br> Solicitor General <br><br> Alaska Department of Law <br> 1031 West 4th Avenue, Suite 200 <br> Anchorage, Alaska 99501-1994 <br> Tel.: (907) 465-4239 <br> Fax: (515) 281-4209 <br><br><br> *Attorneys for the State of Alaska* |

## Certificate of Service

On August 19, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with applicable rules; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson
Aaron L. Nielson

## Certificate of Compliance

This brief complies with: the Court's order because it is 12 pages, excluding the parts of the brief exempted by Rule 32(f). It also complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson
Aaron L. Nielson