**[ORAL ARGUMENT SCHEDULED FOR AUGUST 21, 2024]**

Nos. 24-3089, 24-3094

# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

STATE OF ALASKA, et al.,

        Plaintiffs-Appellees / Cross-Appellants,

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

        Defendants-Appellants / Cross-Appellees.

On Appeal from the United States District Court for the District of Kansas
District Court Case No. 6:24-CV-01057-DDC-ADM (Judge Daniel D. Crabtree)

**SUPPLEMENTAL BRIEF FOR APPELLANTS / CROSS-APPELLEES**

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
THOMAS PULHAM
SIMON C. BREWER
SARAH N. SMITH
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7529*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5367*

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION .................................................................................................. 1

ARGUMENT .......................................................................................................... 1

I.  The Eighth Circuit enjoined several provisions of the Final Rule ........................ 2

II. The Eighth Circuit's decision does not support plaintiffs' position ..................... 2

    A.  Plaintiffs' standing theories were not accepted ............................................ 3

    B.  The Eighth Circuit erred on the merits. ....................................................... 5

    C.  The balance of the equities remains unchanged. ....................................... 11

CONCLUSION ..................................................................................................... 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Biden v. Missouri*,
   595 U.S. 87 (2022) .................................................................................................. 9

*Biden v. Nebraska*,
   600 U.S. 477 (2023) ........................................................................................ 3, 4, 6

*Bradford v. U.S. Dep't of Labor*,
   101 F.4th 707 (10th Cir. 2024) ............................................................................. 6

*Chevron U.S.A. Inc. v. Echazabal*,
   536 U.S. 73 (2002) .................................................................................................. 8

*Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
   601 U.S. 42 (2024) .................................................................................................. 8

*Diné Citizens Against Ruining Our Env't v. Jewell*,
   839 F.3d 1276 (10th Cir. 2016) ............................................................................. 3

*Gomez-Perez v. Potter*,
   553 U.S. 474 (2008) ................................................................................................ 8

*Loper Bright Enters. v. Raimondo*,
   144 S. Ct. 2244 (2024) ........................................................................................... 9

*Marx v. General Revenue Corp.*,
   568 U.S. 371 (2013) ................................................................................................ 8

*Missouri v. Biden*, --- F.4th ---,
   2024 WL 3738157 (8th Cir. Aug. 9, 2024) ............................... 1, 2, 3, 5, 7, 8, 9, 10, 11

*New Mexico Dep't of Game & Fish v. U.S. Dep't of the Interior*,
   854 F.3d 1236 (10th Cir. 2017) ............................................................................. 3

*Starbucks Corp. v. McKinney*,
   144 S. Ct. 1570 (2024) ......................................................................................... 11

*Verlo v. Martinez*,
   820 F.3d 1113 (10th Cir. 2016) ........................................................................... 11

*West Virginia v. EPA*,
   597 U.S. 697 (2022) ................................................................................... 6, 6-7, 7

**Statutes:**

Pub. L. No. 110-84, § 203, 121 Stat. 784, 792-95 (2007) ................................................. 8

20 U.S.C. § 1087e(d)(1)(D) ................................................................................................ 5

20 U.S.C. § 1087e(e)(4) ............................................................................................... 9, 10

**Other Authorities:**

59 Fed. Reg. 61,664 (Dec. 1, 1994) .................................................................................... 7

77 Fed. Reg. 66,088 (Nov. 1, 2012) .................................................................................... 7

80 Fed. Reg. 67,204 (Oct. 30, 2015) ................................................................................... 7

88 Fed. Reg. 43,820 (July 10, 2023) .......................................................................... 1, 5, 10

Order, *Missouri v. Biden*, No. 24-2332 (8th Cir. Aug. 19, 2024) ....................................... 2

Order, *Missouri v. Biden*, No. 4:24-cv-520 (E.D. Mo. July 10, 2024) .............................. 10

# GLOSSARY

| | |
|---|---|
| FFEL | Federal Family Education Loan |
| HEA | Higher Education Act |
| IBR | Income-Based Repayment |
| ICR | Income Contingent Repayment |
| REPAYE | Revised Pay As You Earn |
| SAVE | Saving on a Valuable Education |

## INTRODUCTION

The United States Department of Education and the Secretary of Education (collectively, the Department) respectfully submit this supplemental brief regarding the injunction pending appeal granted in *Missouri v. Biden*, --- F.4th ---, 2024 WL 3738157 (8th Cir. Aug. 9, 2024) (per curiam).

That injunction has sown chaos and confusion. In addition to being highly inequitable, it rests on a flawed legal analysis that disregards the Department's authority to set payment amounts and, ultimately, forgive loans under the plain text of the Higher Education Act (HEA). Accordingly, the Department has sought relief from the Supreme Court. *See* Application to Vacate the Injunction, *Biden v. Missouri*, No. 24A173 (U.S. Aug. 13, 2024).[1] This Court need not await the Supreme Court's decision on that application. Instead, it should hold that the HEA clearly authorizes the challenged provisions of the Final Rule (88 Fed. Reg. 43,820 (July 10, 2023)) for the reasons set forth previously.

## ARGUMENT

This Court directed the parties to address two issues: (1) "the scope of the Eighth Circuit's injunction" and (2) "how (if at all) the Eighth Circuit's injunction affects this [C]ourt's analysis." Order 1 (Aug. 12, 2024).

---

[1] The *Missouri* plaintiffs' response was filed on August 19.

**I.     The Eighth Circuit enjoined several provisions of the Final Rule.**

The Eighth Circuit enjoined the government "from any further forgiveness of principal or interest, from not charging borrowers accrued interest, and from further implementing SAVE's payment-threshold provisions" for "any borrower whose loans are governed in whole or in part by the terms of" the Final Rule. *Missouri*, 2024 WL 3738157, at *4.  The Department sought clarification as to whether the court intended to enjoin either (1) loan forgiveness offered under statutory authorities other than income contingent repayment (ICR), such as income-based repayment (IBR) or the public service loan forgiveness program; or (2) loan forgiveness offered to borrowers enrolled in previously existing ICR plans (i.e., the original ICR plan or PAYE) on timelines established as part of those plans.  *See* Emergency Motion for Clarification, *Missouri v. Biden*, No. 24-2332 (8th Cir. Aug. 12, 2024).  The plaintiffs did not oppose the first request but opposed the second.  *See* Response to Emergency Motion for Clarification, *Missouri v. Biden*, No. 24-2332 (8th Cir. Aug. 13, 2024).  The Eighth Circuit denied the motion without explanation.  Order, *Missouri v. Biden*, No. 24-2332 (8th Cir. Aug. 19, 2024).

**II.    The Eighth Circuit's decision does not support plaintiffs' position.**

The *Missouri* injunction pending appeal does not support either the district court's preliminary injunction or plaintiffs' request for expanded relief.  At the outset, the Eighth Circuit only required the plaintiffs to show "a fair chance" of success or a "substantial question" on the merits.  *Missouri*, 2024 WL 3738157, at *3.  This Court

has rejected such a "lenient standard" as incompatible with the movant's burden to show a likelihood of success on the merits to obtain a preliminary injunction. *See Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016); *New Mexico Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1246-47 (10th Cir. 2017). Plaintiffs cannot meet that correctly articulated version of their burden.

That aside, the Eighth Circuit's opinion does not support plaintiffs' position here. The court accepted a standing theory not presented in this case. And the abbreviated merits analysis misapplied the major-questions doctrine and disregarded the Department's broad statutory authority. If this Court reaches the merits, it should uphold the SAVE plan notwithstanding the Eighth Circuit's erroneous preliminary conclusion.

### A. Plaintiffs' standing theories were not accepted.

Before proceeding to the merits, the Eighth Circuit concluded that at least one plaintiff—Missouri—likely had standing. *See Missouri*, 2024 WL 3738157, at *3. The court held that Missouri's allegations "are substantially similar to, if not identical to, those the Supreme Court held were sufficient to establish Missouri's standing just last year in *Biden v. Nebraska*," 600 U.S. 477 (2023). *See Missouri*, 2024 WL 3738157, at *3. In *Nebraska*, the Supreme Court accepted that a student-loan cancellation plan would cause "financial harm" to a Missouri instrumentality (MOHELA) that services Federal Direct Loans. 600 U.S. at 489-90. The Court explained that because "MOHELA receives an administrative fee for each . . . account[] it services," the early discharge of

3

loans would cost MOHELA "fees that it otherwise would have earned under its contract with the Department." *Id.* Thus, Missouri's standing depended on MOHELA's role as a servicer of Department-held loans.

Even if the Eighth Circuit had correctly applied *Nebraska*'s holding in *Missouri*, it would not apply here. As the district court here explained, plaintiffs do not allege any analogous injury. *See* App. Vol. II, at 468 (plaintiffs' "theory of public instrumentality harm is different—and weaker—than the public instrumentality harm that prevailed in *Biden v. Nebraska*"). Plaintiffs' instrumentalities do not service Federal Direct Loans, so none stands to lose servicing revenue if loans held by the Department are forgiven under the Final Rule. *See id.* ("[P]laintiffs haven't alleged any loss of revenue from *servicing* loans."). Instead, plaintiffs assert injuries arising from the consolidation of Federal Family Education Loans (FFELs) held by those State instrumentalities, lost State income tax revenue, and increased difficulty in recruiting public employees. *See generally* Third Br. 8-20.

The *Missouri* plaintiffs also advanced standing theories based on FFEL consolidation, lost income tax revenue, and competitive harm to their recruitment efforts, *see Missouri v. Biden*, --- F. Supp. 3d ---, 2024 WL 3104514, at *8-10 (E.D. Mo. June 24, 2024), but no court has accepted them. To the contrary, the *Missouri* district court characterized those theories as "tenuous at best," *id.* at *19, and the Eighth Circuit did not conclude otherwise. The *Missouri* injunction pending appeal therefore provides no support for plaintiffs' standing arguments in this case.

4

### B. The Eighth Circuit erred on the merits.

If this Court does reach the merits, it should uphold the Final Rule. As previously discussed, the plain text of Section 1087e(d)(1)(D) establishes two basic principles. First, how much a borrower repays each year will be "based on the income of the borrower." 20 U.S.C. § 1087e(d)(1)(D). Second, no borrower will be required to make payments indefinitely; rather, borrowers will make payments for "an extended period of time prescribed by the Secretary, not to exceed 25 years." *Id.* The only type of plan that complies with both principles is one that allows the borrower to make income-contingent payments for the duration of the prescribed period and then forgives any outstanding balance at the end of that period. Any other type of plan would violate one or both of the principles that Congress enacted into the text.

The Eighth Circuit's contrary conclusion rests on multiple legal errors.

**1.** In assessing the Department's statutory authority to promulgate the Final Rule, the Eighth Circuit largely bypassed the pertinent statutory text. Instead, the court invoked the major-questions doctrine based on an unofficial estimate of the Rule's "economic impact." *Missouri*, 2024 WL 3738157, at *3.[2] But cost alone has

---

[2] The Eighth Circuit did not analyze the various challenged provisions individually, instead treating the Final Rule as a whole. But each challenged provision "has been determined independently" and "can operate in a manner that is independent and severable." 88 Fed. Reg. at 43,827-28. Each should therefore be analyzed separately; otherwise, disparate provisions might trigger the doctrine merely because they happen to appear in the same Federal Register notice. Even under the Eighth Circuit's approach, however, the major-questions doctrine would not apply to the SAVE plan for the reasons discussed herein.

5

never been enough to trigger the major-questions doctrine. *See* First Br. 26-27; Third Br. 23-34. After all, the doctrine is a tool for discerning "the text's most natural interpretation" by situating the text in "context." *Nebraska*, 600 U.S. at 508 (Barrett, J., concurring) (emphasis omitted). So in deciding whether the doctrine applies, the Supreme Court has considered not just the "economic and political significance" of the asserted authority but other surrounding circumstances, such as the "history and the breadth of th[at] authority." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (quotation marks omitted); *see, e.g.*, *Nebraska*, 600 U.S. at 501 (same). Accordingly, this Court has rejected an effort to invoke the doctrine based on "economic significance" alone. *See Bradford v. U.S. Dep't of Labor*, 101 F.4th 707, 724-28 (10th Cir. 2024).

Here, neither the history nor the breadth of the authority that the Department has exercised "provide[s] a 'reason to hesitate before concluding that Congress' meant to confer such authority." *West Virginia*, 597 U.S. at 721. To the contrary, the SAVE plan is just "one more entry in an unbroken list of prior ICR rules," all of which shared the same fundamental features. *Id.* at 726. Every ICR plan ever offered has set payments as a percentage of the borrower's discretionary income and provided for loan forgiveness at the conclusion of the plan's term. *See* First Br. 5-6, 25. The Eighth Circuit failed to ascribe the proper significance to the fact that the Department exercised precisely the same authority in adopting the preexisting ICR plans with those same essential features decades ago. *See Nebraska*, 600 U.S. at 501 (examining "past practice under the statute"); *West Virginia*, 597 U.S. at 725 (looking to the

agency's "established practice" (quotation marks omitted)); *id.* at 747 (Gorsuch, J., concurring) ("A 'contemporaneous' and long-held Executive Branch interpretation" provides "evidence of the statute's original charge.").

The Eighth Circuit suggested that the SAVE plan "alter[ed]" the Department's authority by being more "generous" than prior ICR plans, focusing on the fact that some borrowers will have monthly required payments of $0 before receiving loan forgiveness. *Missouri*, 2024 WL 3738157, at *1, *3. Although many borrowers will see reduced bills—including some for $0 per month—under the SAVE plan, that was true for prior plans. *See, e.g.*, 80 Fed. Reg. 67,204, 67,229 (Oct. 30, 2015); 77 Fed. Reg. 66,088, 66,117 (Nov. 1, 2012); 59 Fed. Reg. 61,664, 61,676 (Dec. 1, 1994). And although some borrowers will receive loan forgiveness faster under the SAVE plan, borrowers enrolled in ICR plans have always been eligible for forgiveness at the end of their repayment term. *See* 80 Fed. Reg. at 67,209; 77 Fed. Reg. at 66,114; 59 Fed. Reg. at 61,666. That those plans were, as the Eighth Circuit put it, "relatively uncontroversial" should underscore that the SAVE plan is not a "vast assertion of newfound power." *Missouri*, 2024 WL 3738157, at *1, *3.

**2.** Whether or not the major-questions doctrine applies, however, the Eighth Circuit's injunction rests on an unsupported view of the agency's statutory authority. The statutory text and context provide clear support for the SAVE plan. *See* First Br. 28-32; Third Br. 26-34.

7

*Shortened timeline to forgiveness.* The Eighth Circuit principally relied on a contrast between Section 1087e, which it regarded as "silen[t]" on "forgiveness under ICR plans," and other provisions of the HEA (such as the one governing IBR plans), which it described as "'explicitly permit[ting] loan forgiveness.'" *Missouri*, 2024 WL 3738157, at *3. The premise of that comparison is mistaken, as Section 1087e is not silent on forgiveness. As explained above, any plan that fails to forgive any outstanding balance at the end of the repayment period cannot be squared with the text. Here, as in other contexts, "Congress need not state its intent in any particular way." *Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). And "the fact that Congress chose to use certain language" to provide for forgiveness in one provision of the HEA "hardly means it was 'foreclosed from using different language'" to provide for forgiveness in a "different" provision of "the same law." *Id.* at 52 (alterations omitted).

Even if the ICR statute were silent, a negative inference would not be sensible here. *See Marx v. General Revenue Corp.*, 568 U.S. 371, 381 (2013) ("The force of any negative implication . . . depends on context."). For one, in other provisions permitting loan forgiveness, "statutory language suggesting exclusiveness is missing." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002). For another, the IBR provision cited by the Eighth Circuit was added in 2007, *see* Pub. L. No. 110-84, § 203, 121 Stat. 784, 792-95 (2007)—well over a decade after Congress enacted the ICR statute. *Cf. Gomez-Perez v. Potter*, 553 U.S. 474, 486 (2008) (rejecting a negative

8

inference when the relevant provisions "were not considered or enacted together"). As we have shown, other aspects of the 2007 amendments further confirm the Department's interpretation. *See* Third Br. 27-28, 29-30.

As discussed above, the agency's "longstanding practice . . . in implementing the relevant statutory authorit[y]" reinforces its interpretation. *Biden v. Missouri*, 595 U.S. 87, 94 (2022) (per curiam). Past practice is "especially" relevant here because the Department's "interpretation issued contemporaneously with the enactment of the statute." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2259 (2024). And plaintiffs themselves have acknowledged the validity of the preexisting ICR plans, even though each included a forgiveness component. *See* Second Br. 5-6, 36. Because the Final Rule's forgiveness provision relies on the same statutory authority, this Court should uphold its validity under the HEA.

*Payment provisions.* The Eighth Circuit did not separately address the Department's authority to set payment amounts or a protected-income threshold for ICR plans. *See Missouri*, 2024 WL 3738157, at *3. But the statutory text plainly directs the Secretary "to prescribe rules to 'fill up the details'" about ICR plans by setting payment amounts. *Loper Bright*, 144 S. Ct. at 2263. Congress unambiguously authorized the Secretary to "determine[]" the "appropriate portion of the [borrower's] annual income" for calculating payments. 20 U.S.C. § 1087e(e)(4). In every ICR plan, the Secretary has exercised that authority by first determining a borrower's discretionary income (by subtracting a protected amount from the borrower's

9

adjusted gross income) and then calculating payments as a percentage of that discretionary income.

Because the Eighth Circuit offered no reason for rejecting that longstanding methodology, its decision provides no basis for preliminarily enjoining either the Final Rule's protected-income or payment-calculation provisions.[3]

*"Hybrid plan."* Finally, the Eighth Circuit was mistaken to the extent that it suggested that the Department improperly combined aspects of REPAYE and SAVE into a "hybrid plan" designed to circumvent the *Missouri* district court's injunction. *Missouri*, 2024 WL 3738157, at *2. Following the *Missouri* district court's injunction and prior to the Eighth Circuit's administrative stay, SAVE/REPAYE plans were governed by the Final Rule in all respects except for the shortened timeline to forgiveness (which was the only provision then enjoined). That state of affairs did not reflect the promulgation of a new "hybrid plan," but rather resulted from well-established severability principles. The *Missouri* district court recognized as much when denying a motion for clarification filed by the *Missouri* plaintiffs. Order, *Missouri v. Biden*, No. 4:24-cv-520 (E.D. Mo. July 10, 2024).

---

[3] As noted above, the Eighth Circuit also enjoined the accrued-interest benefit. *See* 88 Fed. Reg. at 43,851. Plaintiffs here never specifically challenged or asserted harm arising from that provision. In any event, the Department's authority to establish "[i]ncome contingent repayment schedules" encompasses the authority to determine the amount of accrued interest to be charged. 20 U.S.C. § 1087e(e)(4).

## C. The balance of the equities remains unchanged.

The Eighth Circuit's injunction also does not affect the balance of the equities. As previously explained, the Eighth Circuit first issued an administrative stay of the entire Final Rule, which the Department complied with by ceasing all implementation of the Rule and placing SAVE-enrolled borrowers into forbearance. In granting the injunction pending appeal, the Eighth Circuit then appeared to assume that the Department and borrowers would not suffer harm from the injunction because its order purported to "preserve" the "status quo." *Missouri*, 2024 WL 3738157, at *4. But that "status quo" was entirely of the court's own making. Before the Eighth Circuit acted, all provisions of the Final Rule (except the shortened timeline to forgiveness) were in effect—some for more than a year. *See* First Br. 9. The injunction was therefore improper. *See Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) ("[A preliminary injunction's] purpose 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'").

Plaintiffs have suggested that the Department's compliance with the Eighth Circuit's prior administrative stay diminishes the irreparable harm inflicted by an injunction in this case. Fourth Br. 12, 23. It does not. To start, "post-injunction events are not relevant to [this Court's] resolution of this interlocutory appeal." *Verlo v. Martinez*, 820 F.3d 1113, 1125 (10th Cir. 2016). Even if those extraordinary compliance measures were relevant, they only confirm the irreparable harm suffered by the Department. As the Department's stay motion explained (at 17-19), enjoining

11

implementation of the SAVE plan would disrupt months of work and result in widespread chaos and confusion by throwing into uncertainty borrowers' repayment obligations. The Department explained that it would have no choice but to place borrowers into forbearance until servicers could accurately recalculate loan payments. Stay Mot. 18. All of this would come at the expense of borrowers, as periods of forbearance-related nonpayment will not be counted toward forgiveness under income-driven repayment plans or public service loan forgiveness. *Id.* All of these harms have come to pass, and each passing day perpetuates them.

This Court previously recognized the gravity of those harms in granting a stay pending appeal. Order (June 30, 2024). That another court has now entered a conflicting order—one that, because of its universal scope, in effect nullifies this Court's stay order—provides no basis for reaching a contrary conclusion.

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be reversed, not expanded, irrespective of the Eighth Circuit's injunction pending appeal.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
   *General*

MICHAEL S. RAAB
THOMAS PULHAM
 *s/ Simon C. Brewer*
SIMON C. BREWER
SARAH N. SMITH
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7529*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 616-5367*
   *Simon.C.Brewer@usdoj.gov*

August 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limit set by this Court's supplemental briefing order entered on August 12, 2024, because it does not exceed 12 pages. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Simon C. Brewer*
Simon C. Brewer

# CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

                                                    *s/ Simon C. Brewer*
                                                    Simon C. Brewer